United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 21, 2006**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

No. 05-70053

VINCENT GUTIERREZ,

Petitioner-Appellant,

versus

NATHANIEL QUARTERMAN, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Request for Certificate of Appealability for Relief from the
Denial of a Petition for Writ of Habeas Corpus in the United
States District Court for the Eastern District of Texas
(SA-01-CA-1033-FB)

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Vincent Gutierrez was convicted in Texas state court of capital murder and sentenced to death. The district court's having denied habeas relief and a certificate of appealability (COA), Gutierrez seeks a COA for five issues. Concomitantly, he challenges the district court's denying funding for investigative assistance. A COA is **DENIED**.

I.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

The following factual recitation is based primarily upon that presented by the district court. *Gutierrez v. Dretke* (*USDC Opn.*), 392 F.Supp. 2d 802 (W.D. Tex. 2005).

On 10 March 1997, Gutierrez, Randy Arroyo, and several others met at Christopher Suaste's residence to discuss Arroyo's desire to steal an automobile. The next morning, Arroyo, Gutierrez, and Suaste drove to an apartment complex where the target vehicle was parked. It was owned by United States Air Force (USAF) Captain Jose Cobo. Suaste parked his vehicle nearby and watched Gutierrez and Arroyo approach the target vehicle, enter it, and drive out of the complex. While returning to his home, Suaste saw Captain Cobo lying on the shoulder of the highway with blood stains on his shirt.

Several hours later, Suaste received several telephone calls from Arroyo and Gutierrez, asking Suaste to pick them up. Upon doing so, Suaste observed Gutierrez wearing different clothes than those worn earlier that day. The newer clothes were a tee shirt and a pair of gym shorts with the USAF logo. Gutierrez explained his earlier clothes had blood on them, and the new clothes were obtained from the back of the stolen automobile.

Upon Suaste's inquiring about what happened after he left the apartment complex, Gutierrez laughingly explained: upon entering the target vehicle, he forced Captain Cobo at gunpoint to move to the back seat; Arroyo drove the vehicle from the complex; when

2

Captain Cobo begged for his life and offered his wallet, Gutierrez reassured him that he would be released; nonetheless, Captain Cobo attempted to exit the vehicle, but was restrained by his seat belt; Gutierrez grabbed Captain Cobo to prevent him from jumping from the vehicle; at that point, Arroyo yelled "Shoot him. Shoot him. He's trying to escape."; Gutierrez fired his pistol twice, striking Captain Cobo in the back; Captain Cobo began choking and coughing up blood; as Gutierrez and Arroyo drove on, Gutierrez stated he did not want to drive around with a "dead man" in the car; Gutierrez directed Arroyo to reduce the vehicle's speed; and, upon his doing so, Gutierrez shoved Captain Cobo out of the moving vehicle onto the shoulder of the highway.

Later that day, Arroyo confessed to being involved in Captain Cobo's murder and led police to the pistol Gutierrez had used to kill him. Gutierrez was charged with capital murder for an intentional killing by firearm while in the course of kidnapping and robbery.

On 2 March 1998, a jury found Gutierrez guilty of capital murder, pursuant to § 19.03(a) of the Texas Penal Code. Pursuant to the jury's answers to the statutory special issues, he was sentenced to death.

Gutierrez raised only two issues on direct appeal (jury instruction on accomplice liability and facial challenge to the constitutionality of Texas' death penalty); neither is at issue

3

here.  The Texas Court of Criminal Appeals affirmed.  *Gutierrez v. State*, No. 73,065 (Tex. Crim. App. 12 April 2000) (unpublished).  Gutierrez did not seek review by the Supreme Court of the United States.

In requesting state-habeas relief, Gutierrez raised 11 claims, including the claims for which he seeks a COA, but *not* including the four claims for which he seeks a COA regarding insufficient investigative funding.  The judge who had presided at trial presided over the state-habeas proceeding; granted part of the amount requested for investigating possible claims; held an evidentiary hearing; and, in a 61-page opinion, rendered findings of fact and conclusions of law, recommending denial of relief.  *Ex Parte Gutierrez*, No. 97-CR-2457-B-W1 (226th Dist. Ct., Bexar County, Tex. 2001).  That court concluded, *inter alia*:  Gutierrez had procedurally defaulted his claims based on trial error, because they were *not* raised on direct appeal.  *Id*.  In the alternative, the court addressed each claim on the merits, concluding no relief was warranted.  *Id.*

The Texas Court of Criminal Appeals adopted the state-habeas court's findings and conclusions and denied relief.  *Ex Parte Vincent Gutierrez*, No. 49,887-01 (Tex. Crim. App. 10 Oct. 2001) (per curiam) (unpublished).  Gutierrez did not seek review by the Supreme Court of the United States.

4

In April 2002, Gutierrez presented 14 claims for federal habeas relief. After filing his application, Gutierrez moved for the appointment of an investigator, claiming such assistance was necessary to rebut the state-habeas factual findings by clear and convincing evidence, as required under the applicable Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Gutierrez admitted, however, that the claims for which he sought investigative assistance were procedurally defaulted because they had *not* been exhausted in state court.

The district court denied the requested investigative assistance. Subsequently, in a 154-page opinion in September 2005, it granted the State's summary-judgment motion, denying habeas relief on all 14 claims, and *sua sponte* denied Gutierrez a COA. **USDC Opn.**, 392 F.Supp. 2d at 810.

## II.

As noted, Gutierrez' 28 U.S.C. § 2254 habeas petition is subject to AEDPA. *See*, *e.g.*, **Penry v. Johnson**, 532 U.S. 782, 792 (2001). Under AEDPA, in order to appeal the denial of habeas relief on a claim, he must obtain a COA from either the district, or this, court. 28 U.S.C. § 2253(c); FED. R. APP. P. 22(b)(1); **Slack v. McDaniel**, 529 U.S. 473, 478 (2000). To do so, he must "ma[k]e a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); *see* **Miller-El v. Cockrell**, 537 U.S. 322, 336

(2003); *Slack*, 529 U.S. at 483. In that regard, he must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'". *Miller-El*, 537 U.S. at 336 (quoting *Slack*, 529 U.S. at 484). Moreover, for a COA request involving a procedural ruling by the district court, such as its reviewing the procedural-default rulings by the state-habeas court discussed *infra*, the petitioner must show jurists of reason would find it debatable whether: (1) the underlying claim for the COA request is a valid assertion of the denial of a constitutional right; *and* (2) the district court's procedural ruling was correct. *Slack*, 529 U.S. at 484.

In deciding whether to grant a COA, a federal court is limited, *inter alia*, "to a threshold inquiry into the underlying merit of [Gutierrez'] claims". *Miller-El*, 537 U.S. at 327. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.* at 336. Instead, our analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits". *Id.* This being a death penalty case, "any doubts as to whether a COA should issue must be resolved in [Gutierrez'] favor". *Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir.), *cert. denied*, 531 U.S. 966 (2000).

6

Of course, for purposes of the requisite threshold-inquiry, we are mindful that, in ruling on the merits, the district court was required by AEDPA to defer to the state court's adjudication on questions of law and mixed questions of law and fact, unless that "decision ... 'was contrary to, or involved an *unreasonable* application of, clearly established Federal law, as determined by the Supreme Court'" (reasonable decision). ***Hill v. Johnson***, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(1)) (emphasis added), *cert. denied*, 532 U.S. 1039 (2001). A decision is contrary to clearly established federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". ***Miniel v. Cockrell***, 339 F.3d 331, 337 (5th Cir. 2003), *cert. denied*, 540 U.S. 1179 (2004).

Likewise, for this threshold-inquiry, we are mindful that, in ruling on the merits, the district court was required to defer to the state court's factual findings, unless they "resulted in a decision that was based on an *unreasonable* determination of the facts in light of the evidence presented in the State court proceeding" (reasonable decision). 28 U.S.C. § 2254(d)(2) (emphasis added). In that regard, those findings are "presumed to be correct"; as noted, in district court, Gutierrez had "the burden

7

of rebutting [that] presumption ... by clear and convincing evidence". 28 U.S.C. § 2254(e)(1).

The first four claims for which a COA is requested are:

(1) whether the state-habeas and district courts erred in construing Gutierrez' due-process claim (regarding the prosecution's alleged failure to produce information about a juror's prior offense) as one arising under *Brady v. Maryland*, 373 U.S. 83 (1963) (holding prosecution's suppression of favorable *material* evidence violates due process);

(2) whether Gutierrez was denied a fair and impartial jury, as required by the Sixth and Fourteenth Amendments, because (a) the above-referenced juror misstated she had never been convicted of a crime, thus precluding Gutierrez' counsel from making a for-cause challenge, and (b) the trial court granted the State's for-cause challenge for a prospective juror;

(3) whether the trial court's denial of Gutierrez' severance motion at the trial's penalty phase denied him the right to individualized sentencing, pursuant to the Eighth Amendment; and

(4) whether, by failing to challenge on direct appeal both the for-cause juror-dismissal and the severance-denial, Gutierrez' counsel was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984) (two-pronged standard for making an ineffective assistance of counsel (IAC) claim: counsel's performance was deficient; and that deficiency caused prejudice).

The fifth COA request concerns four unexhausted claims. Gutierrez maintains he failed to exhaust them because the state-habeas court refused to grant him *enough* funding to conduct an investigation. Regarding that fifth COA request, Gutierrez challenges the district court's denial of investigative-assistance funding.

A.

In the state-habeas and district courts, Gutierrez claimed he was denied due process by the prosecution's failing to disclose potential-juror Rosemary Harrell had been arrested for, and convicted of, theft in 1979 of an amount less than five dollars. Subsequently, she served as a juror. Both courts analyzed this claim under the well-known **Brady** framework: as stated *supra*, a claimant must show the prosecution suppressed favorable evidence *material* to the outcome of the trial. **Brady**, 373 U.S. at 87. Under **Brady**, evidence is "material" if there is a reasonable probability the result of the proceeding would have been different had the evidence been disclosed; a reasonable probability is one sufficient to undermine confidence in the outcome. **Martin v. Cain**, 246 F.3d 471, 477 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001).

Gutierrez claims prosecutorial misconduct — conduct barred by the due-process clause. *See, e.g.,* **Brady**, 373 U.S. at 85-88. Although he insists both courts erred in applying **Brady**, he does not explain why it is not the proper standard. In any event,

9

Gutierrez' framing of the issue is quite similar to the **Brady** standard. He maintains: "The issue ... involves the obligations of the prosecutor, under the Due Process Clause[,] ... to disclose to the trial court and defense[,] *material* evidence [that] raises questions about whether a juror is categorically excludable from the jury". (Emphasis added.) Gutierrez does *not* claim such misconduct requires automatic reversal and remand for a new trial. *See, e.g.,* **United States v. Huey**, 76 F.3d 638, 639 (5th Cir. 1996) (where **Batson v. Kentucky**'s rule against the use of peremptory strikes based on race, 476 U.S. 79 (1986), had been violated, reversal and remand for new trial without analysis of prejudice to the defendant). Indeed, not all prosecutorial misconduct requires **Batson**-like reversal.

The prosecution's failure to disclose information about a prospective juror is *not* exculpatory, material evidence under **Brady**. **Jones v. Butler**, 864 F.2d 348, 355 (5th Cir. 1988), *cert. denied*, 490 U.S. 1075 (1989). Irrespective of the name utilized by the state-habeas and district courts for their analysis of this claim, a review for prejudice *vel non* was required. For example, in **Johnson v. Cabana**, our court held: where a prosecutor potentially knew a juror had made a false statement on a juror questionnaire, namely that she did not have a relative in the same jail as the defendant, there was no showing of *prejudice*. 818 F.2d

10

333, 343 (5th Cir.), *cert. denied*, 481 U.S. 1061 (1987). Furthermore, the Supreme Court has directed that claims for prosecutorial misconduct in a state conviction are reviewed deferentially. *See, e.g.,* **Donnelly v. DeChristoforo**, 416 U.S. 637, 643 (1974) (prosecutorial misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

Part of the following facts were developed at the state-habeas evidentiary hearing, at which Gutierrez' trial counsel and the lead prosecutor testified. As part of the jury selection for Gutierrez' trial in 1998, Harrell responded to her jury questionnaire that she had never been "charged or arrested with any type of shoplifting or theft offense". Before questioning her during voir dire, however, the lead prosecutor, having performed a criminal background check, learned: almost 20 years earlier, Harrell had been arrested in 1979 for theft under five dollars.

Accordingly, during voir dire, the prosecutor questioned Harrell about the incident. She responded she believed it had been "totally dismissed". The prosecutor also asked her "to the best of [her] recollection" whether she paid a fine or attended a court hearing. She responded "no".

During jury selection, the prosecutor conducted further research into Harrell's prior arrest, contacting the municipal court in the county where it had occurred. An individual at that

11

court told the prosecutor Harrell had neither a conviction for the theft offense nor an active case against her, but that her bond had been forfeited. Based on that information, the prosecutor concluded Harrell likely did *not* have a conviction for the charge. The prosecutor was provided a letter to that effect but did not remember showing it to Gutierrez' counsel.

Gutierrez' counsel's questioning of Harrell during voir dire did *not* relate to her prior theft arrest. As noted, she was selected as a juror.

After holding the evidentiary hearing, the state-habeas court made detailed findings, including: (1) there was no evidence Harrell had been *convicted* of theft in connection with her 1979 shoplifting charge; (2) her bond forfeiture did not make her ineligible to serve on a jury, or subject her to a successful for-cause challenge; (3) the prosecution's alleged failure to disclose the bond-forfeiture evidence did not constitute "favorable" **Brady** evidence; and (4) even if the evidence was favorable, there was no reasonable likelihood that the result of Gutierrez' trial would have been different.

The district court held: under AEDPA, Gutierrez had *not*, by the requisite clear-and-convincing evidence, rebutted the state-habeas court's factual findings. **USDC Opn.**, 392 F.Supp. 2d at 835-37. According the deference required by AEDPA to these detailed findings, the court held the state-habeas decision was "an

12

objectively reasonable application of clearly established federal law". *Id.* at 852.

In his COA request, Gutierrez notes that Texas' Constitution and Code of Criminal Procedure require any prospective juror who has been convicted of, or is currently under a charge of, theft be excused from jury service. TEX. CONST. ART. XVI, § 2; TEX. CODE CRIM. PRO. ART. 35.16(a)(2). He further insists that state law also requires the dismissal "of any juror who 'appears' to be disqualified to serve as a juror because of a conviction for theft". Because the prosecutor knew Harrell might have been convicted of theft, Gutierrez maintains his due-process rights were violated by the failure to disclose this information.

For COA purposes, reasonable jurists would *not* debate that, under AEDPA, the district court concluded correctly that, in holding Gutierrez had not stated a meritorious ***Brady*** claim, the state-habeas decision was *not* unreasonable because: evidence of Harrell's bond forfeiture was not favorable evidence that would have sustained a for-cause challenge; and, even if the evidence was favorable, Gutierrez has not shown how Harrell's replacement would have voted in jury deliberations concerning Gutierrez' conviction and/or sentence. Again, irrespective of the state-habeas and district courts' classifying this as a ***Brady*** claim, that does *not* render the state-habeas decision unreasonable under AEDPA or the district-court decision debatable by reasonable jurists. Each

13

court was required to consider whether any alleged prosecutorial misconduct was prejudicial to Gutierrez' trial.

As discussed *infra*, any alleged prosecutorial misconduct concerning Harrell's selection as a juror did *not* deny Gutierrez an impartial jury. In fact, for several reasons, including Harrell's Catholic faith, as discussed *infra*, Gutierrez' counsel wanted her on the jury. In any event, for COA purposes, Gutierrez has not adequately shown pursuant to AEDPA that he was prejudiced by the alleged prosecutorial misconduct, or that it "so infected [his] trial with unfairness as to make [his] conviction a denial of due process". *DeChristoforo*, 416 U.S. at 643. Moreover, this claim is not "adequate to deserve encouragement to proceed further". *Slack*, 529 U.S. at 484.

### B.

Next, Gutierrez seeks a COA for whether he was denied an impartial jury, in violation of the Sixth and Fourteenth Amendments, because: (1) Harrell made a material misstatement that she had never been arrested or convicted of a crime of theft; and (2) the prosecution successfully challenged Gerald Becker for cause, based solely on his religious beliefs, in violation of *Witherspoon v. Illinois*, 391 U.S. 510 (1968) (holding prospective jurors may *not* be excused from jury service in a capital case

14

because, based on religious beliefs, they voice *general* objections to the death penalty).

1.

In both his state and federal habeas petitions, Gutierrez claimed Harrell made a material misrepresentation when she stated: in the jury questionnaire, that she had never been charged, or arrested, with theft or shoplifting; and, during voir dire, that, although she had been charged with theft in 1979, the charges had been dismissed, and she had not been arrested. Gutierrez asserted Harrell had been arrested, charged, *and convicted* of theft, making her ineligible for jury service under Texas law. Furthermore, under ***McDonough Power Equipment, Inc. v. Greenwood***, Gutierrez claimed his due-process rights were violated, because his trial counsel did *not* make a for-cause challenge based on Harrell's voir-dire answers. 464 U.S. 548 (1984) (holding due process violated where a potential juror's failure to answer a material question on voir dire deprived the defendant of information permitting a valid for-cause challenge).

The state-habeas court held Gutierrez had procedurally defaulted this claim because he did *not* raise it on direct appeal. Alternatively, it held: no judgment of conviction had been entered against Harrell; during voir dire, Harrell had responded truthfully, to the best of her knowledge; and, even if she had been disqualified under Texas law for jury service, this potential error

15

did not warrant reversal because Gutierrez neither made a timely objection nor established he suffered significant harm as a result.

The district court likewise denied relief, noting: the state-habeas court was correct in concluding the claim had been procedurally defaulted, *USDC Opn.*, 392 F.Supp. 2d at 835; and, under Texas law, it is well settled that an otherwise final conviction may *not* be collaterally attacked because a jury member was statutorily disqualified. *Id.* at 834 (citing *Ex Parte Bronson*, 254 S.W.2d 177 (Tex. Crim. App. 1952)). Therefore, the district court held: because the state-habeas court's factual findings were reasonable and its conclusions were not an unreasonable application of clearly-established federal law, Gutierrez was *not* entitled to federal habeas relief. *Id.* at 837. It further held: because the state-habeas court reasonably determined Harrell did *not* testify falsely and was *not* disqualified from jury service under Texas law, the state-habeas court's application of *McDonough* was objectively reasonable. *Id.* at 837, 841.

Gutierrez maintains it is debatable among reasonable jurists whether Harrell was dishonest about her theft conviction, and whether that conviction would have subjected her to a for-cause challenge. He does *not* contest, however, the district court's holding the claim was procedurally defaulted. Accordingly, he fails to satisfy the above-described two-prong standard for

16

obtaining a COA when a district-court procedural ruling is at issue.

2.

In his state and federal habeas petitions, Gutierrez claimed he was denied an impartial jury by the trial court's granting the prosecution's for-cause challenge against prospective juror Becker. During voir dire, Becker stated repeatedly that, because of his Catholic faith, he would find it "very difficult, if not virtually impossible, ... to impose [the death penalty]". (As noted above, even though Gutierrez now challenges Harrell's having served on the jury, one reason Gutierrez' trial counsel wanted her as a juror was because of that faith.) Becker also stated: during the trial's penalty phase, and based on his religious beliefs, he would be "more inclined to say ... there is sufficient mitigat[ing evidence]" *not* to impose a death sentence. Based on these, and other, statements, such as his religious beliefs would interfere with his ability to *fairly answer* a special issue, the prosecution made, and the trial court granted, the for-cause challenge. (The trial court initially denied the motion and heard additional examination on the issue.)

Because Gutierrez failed to raise this issue on direct appeal, the state-habeas court held it was procedurally defaulted. In the alternative, it held this **Witherspoon** claim lacked merit because, under "**Adams v. Texas**, [448 U.S. 38 (1980)], a venireman may be

17

struck if his views prevent or substantially impair the performance of his duties as a juror in accordance with the court's instructions and the juror's oath". *Ex Parte Gutierrez*, at 10.

The district court held this *Witherspoon* claim procedurally defaulted. *USDC Opn.*, 392 F.Supp. 2d at 822. Furthermore, it held that, Becker's having repeatedly made clear his death-penalty views would *not* enable him to impose that penalty and having never stated he could set aside those beliefs: Gutierrez had *not* presented clear and convincing evidence to rebut the state-habeas court's factual findings, *id.* at 825; and, based on those findings, that court's application of *Witherspoon* and *Adams* was not contrary to, nor an unreasonable application of, clearly-established federal law, *id.* at 823.

In his COA request, Gutierrez maintains this claim was *not* procedurally defaulted; in the alternative, he claims he has made the requisite cause-and-prejudice showing for this claim to be considered. Citing *Ex Parte Frazier*, 67 S.W.3d 189, 190 (Tex. Crim. App. 2001), Gutierrez claims Texas courts have *not* consistently held that a legitimate claim, not raised on direct appeal, is procedurally defaulted for habeas purposes. Furthermore, he maintains that, because he has made a colorable IAC claim, discussed *infra*, this shows the requisite cause and prejudice to enable the claim to be considered.

18

Pursuant to the above-stated two-prong test for obtaining a COA concerning a district-court's procedural ruling, Gutierrez must show, *inter alia*, that reasonable jurists would debate whether that ruling was correct.  He has *not* done so.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Aguilar v. Dretke*, 428 F.3d 526, 532-33 (5th Cir. 2005), *cert. denied*, 126 S. Ct. 2059 (2006).  *Ex Parte Gardner*, 959 S.W.2d 189 (Tex. Crim. App. 1996), held a state-habeas petitioner may not raise for the first time in his petition a constitutional error occurring at trial.  The *Gardner* rule is "an adequate state ground capable of barring federal habeas review".  *Aguilar*, 428 F.3d at 535.  Furthermore, as discussed *infra*, Gutierrez has *not* made, through his related IAC claim, a cause-and-prejudice showing.  Again, he fails to satisfy the above-discussed two-prong test for obtaining a COA to contest the district court's procedural ruling.

C.

19

Gutierrez seeks a COA for whether the trial court constitutionally erred in failing to grant him a severance during the penalty phase. He concedes: he did *not* raise this severance-denial claim on direct appeal and instead raised it for the first time in his state-habeas proceedings.

The state-habeas court held the claim was procedurally defaulted because it was not raised on direct appeal. In the alternative, it held: the trial court's instruction to the jury that all the evidence must be considered individually with respect to each of the two defendants prevented any prejudice resulting from evidence admitted about Gutierrez' co-defendant, Arroyo; and the Eighth Amendment's mandate for individual sentencing was *not* violated.

In denying relief, the district court held: Gutierrez' severance claim was procedurally defaulted; in the alternative, the claim had no merit because, under *Zafiro v. United States*, 506 U.S. 534 (1993), the trial of co-defendants should be severed "only if there is a serious risk that a joint trial [, *inter alia*,] would compromise a specific trial right of one of the defendants". 506 U.S. at 539. Furthermore, the district court noted that, under *Zafiro*, proper jury instructions can be sufficient to prevent prejudice where the penalty for each co-defendant is being considered during the same proceeding. Along this line, the district court held: because the trial court instructed the jury

20

to consider evidence individually for each defendant to whom it pertained, and because the evidence was not so complicated that the jury could not have compartmentalized it, severance was *not* required. *USDC Opn.*, 392 F.Supp. 2d at 827-29.

In his COA request, Gutierrez reiterates his claim that the Eighth Amendment required severance because there was overwhelming aggravating evidence presented during the penalty phase against Arroyo, and much less aggravating evidence presented against him. Furthermore, he contends he has shown the requisite cause and prejudice to overcome any procedural default.

As discussed, a federal-habeas petitioner must *not* have procedurally defaulted his claim for relief. Furthermore, because we do not grant a COA on Gutierrez' IAC claim related to the severance-motion denial, addressed below, the requisite cause and prejudice has *not* been shown. He fails to satisfy the two-prong standard for receiving a COA concerning a district-court procedural ruling.

D.

Next, Gutierrez requests a COA for his claim that his appellate counsel was constitutionally ineffective under *Strickland* for failing to challenge on appeal: the for-cause dismissal of Becker; and the severance-denial at the penalty phase.

1.

Concerning his claim in his state and federal habeas petitions that his appellate counsel was constitutionally ineffective for failing to appeal the for-cause dismissal, Gutierrez contends the prosecution made the challenge based on Becker's religious beliefs, discussed *supra*. The state-habeas court held: (1) the trial court's granting the for-cause challenge was not unconstitutional in the light of **Witherspoon**; and (2) Gutierrez failed to show counsel's not raising this issue on appeal constituted IAC.

The district court held similarly:

> Becker's exclusion was consistent with **Witherspoon** and its progeny, [and] even if erroneous, was nonetheless reasonable under clearly established federal law .... For similar reasons, there was nothing unreasonable with the state habeas court's determination that the failure of petitioner's state appellate counsel to pursue a **Witherspoon** claim on direct appeal did not cause the performance of said counsel to fall below an objective level of reasonableness.

**USDC Opn**., 392 F.Supp. 2d at 883. Finally, the court noted that Gutierrez had failed to show, under **Strickland**, how appellate counsel's not raising this issue caused Gutierrez prejudice because there is "no reasonable probability that, but for [this failure], the outcome of [his] direct appeal would have been any different". **Id**. at 884.

Gutierrez maintains he made a colorable IAC claim because: the state court's factual determination that Becker's religious

views would have precluded him from serving on the jury is *not* supported by the record; appellate counsel's failure to raise this issue is inexplicable and was objectively unreasonable; and resulting prejudice is shown because an automatic reversal is required where a for-cause challenge is erroneously granted under **Witherspoon**.

Of course, appellate counsel need not, and should not, raise every non-frivolous issue on appeal. *E.g.,* **Smith v. Robbins**, 528 U.S. 259, 288 (2000). As reflected earlier in describing the bases for the for-cause challenge, reasonable jurists would *not* debate that the district court correctly concluded the state-habeas court was not unreasonable in holding appellate counsel's performance did not fall below an objectively reasonable standard. Furthermore, this claim does not "deserve encouragement to proceed further". *See* **Slack**, 529 U.S. at 484.

2.

Concerning Gutierrez' claim that his appellate counsel rendered IAC for failing to appeal the penalty-phase severance-denial, the state-habeas court held: because there were proper jury instructions and the evidence presented was not too difficult to be compartmentalized, a severance was *not* constitutionally required; appellate counsel's performance was *not* objectively unreasonable for failing to raise this non-meritorious claim; and

23

Gutierrez failed to show there is a reasonable probability that, but for counsel's failing to raise this issue, the result of his appeal would have been different.

The district court likewise held that, under AEDPA, the following state-court determinations were not unreasonable in the light of clearly-established federal law: a severance was *not* required under state and federal law; appellate counsel's performance was *not* deficient for failing to raise this issue; and no prejudice resulted from counsel's failing to do so. **USDC Opn**., 392 F.Supp. 2d at 885-86.

For his COA request premised on his claim appellate counsel was constitutionally deficient for failing to raise the severance-denial issue, Gutierrez insists that, because the aggravating evidence against him consisted primarily of prior, non-violent property crimes, and that against Arroyo concerned substantially more violent conduct, appellate counsel's performance was *not* objectively reasonable. He maintains he suffered prejudice as a result because, under the Eighth Amendment's harmless error standard, the appeals court would have been required to reverse his conviction.

As discussed *supra*, Gutierrez did *not* make the requisite showing he was denied a constitutional right to individual sentencing because his severance motion was denied. Accordingly, it is not debatable among reasonable jurists that the district

24

court correctly concluded the state-habeas court was *not* unreasonable in holding appellate counsel's performance was *not* objectively unreasonable for failing to raise a non-meritorious claim.

E.

Gutierrez seeks a COA for the following claims, which he admits are procedurally-defaulted because he did *not* raise them in his state-habeas proceedings: trial counsel IAC; juror misconduct; and due-process violations for a possible undisclosed agreement between a prosecution witness and the State, and the suppression of impeachment evidence relating to a prosecution witness. He maintains the state-habeas court's denial of sufficient funding to investigate these claims creates cause and prejudice for the procedural default. (Along this line, as discussed in part II.F. below, Gutierrez challenges the district court's denial of investigative assistance.)

Gutierrez moved in the state-habeas trial court for funding to investigate the factual bases for these potential claims. It granted him $3000 of the requested $6500 ($1500 of which was granted seven days before his state-habeas petition was due). Despite this funding, Gutierrez claimed in his state-habeas petition he was not able to sufficiently develop the facts to state cognizable claims for relief. The state-habeas court held Gutierrez: had not contended any of the grounds for investigation

25

were meritorious; and had not produced any witnesses to testify about the limitations on his investigative ability. Therefore, it held these claims procedurally defaulted.

Likewise, the district court denied habeas relief, holding: a federal court is not an alternative forum for the development of the factual bases for a claim; Gutierrez would only be entitled to a federal evidentiary hearing upon showing the claim relies on a new rule of constitutional law or the facts could not have been previously discovered through the exercise of due diligence, and those facts would show, by clear and convincing evidence, Gutierrez was actually innocent of the offense, *see* 28 U.S.C. § 2254(e)(2); and Gutierrez had been afforded a full opportunity at the state-habeas evidentiary hearing to develop the factual basis for his claims. **USDC Opn**., 392 F.Supp. 2d at 890-91.

Gutierrez maintains a COA should issue on whether he can show cause and prejudice, based on insufficient funding, for procedurally defaulting on these claims in the state-habeas court. Reasonable jurists, however, would not debate that the district court was correct in concluding that the state-habeas court was not unreasonable in holding them procedurally defaulted. As the district court noted: "Petitioner alleges no specific facts showing his state habeas counsel exercised due diligence to investigate, develop, and present any of [his] unexhausted claims herein to [the] state habeas court". **Id.** at 891. Accordingly,

26

Gutierrez fails to satisfy the two-prong standard for obtaining a COA for the district court's procedural ruling.

F.

In the final point for consideration, Gutierrez contests the district court's denial of his motion for investigative assistance to develop the procedurally-defaulted claims discussed above in part II.E. Pursuant to 21 U.S.C. § 848(q)(9), a district judge, in a capital case, "upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant", may authorize funding for such services.

"This court has held that a COA is not necessary to appeal the denial of funds for expert assistance." *Smith v. Dretke,* 422 F.3d 269, 288 (5th Cir. 2005). Instead, we review for an abuse of discretion the denial of § 848(q) funding. *Id.* As *Smith* noted,

> [t]his court has upheld the denial of such funding when a petitioner has (a) failed to supplement his funding request with a viable constitutional claim that is *not procedurally barred*, or (b) when the sought-after assistance would only support a meritless claim, or (c) when the sought after assistance would only supplement prior evidence.

*Id.* (internal citation omitted; emphasis added).

Gutierrez has *not* shown the district court abused its discretion in failing to grant additional investigative assistance. "[Gutierrez'] right under 21 U.S.C. § 848(q)(9) to the assistance

27

of experts where reasonably necessary to press his habeas claims does *not* entitle him to a federal evidentiary hearing when he has failed to ... develop his evidence in *state* court". **Turner v. Johnson**, 106 F.3d 1178, 1184 n.16 (5th Cir. 1997) (internal citations omitted)*; see also* **Riley v. Dretke**, 362 F.3d 302 (5th Cir. 2004) (holding petitioner cannot show a substantial need for investigative assistance when the claims he seeks to pursue are procedurally barred), *cert. denied*, 543 U.S. 1056 (2005).

### III.

For the foregoing reasons, a COA is

**DENIED**.