OPINION

McCORMICK, Presiding Judge.
Applicant was convicted of capital murder in 1981 for killing a fourteen-year-old girl in the course of kidnapping her. Gardner v. State, 733 S.W.2d 195, 197-98 (Tex.Cr.App.1987), cert. denied, 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989). Applicant received the death penalty at his 1981 trial. Id. In this habeas corpus proceeding, applicant claims the admission of Dr. Griffith’s testimony during the punishment phase of applicant’s 1981 trial violated Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). This testimony was based on statements applicant made to Dr. Griffith and Dr. Grigson during a pretrial psychiatric examination. We filed and set the application on this allegation.
Applicant claims the warnings he received at this pretrial psychiatric examination failed to comply with Estelle v. Smith because they failed to inform applicant that any statement he made could be used against him at the punishment phase of his capital murder trial. See Estelle, 451 U.S. at 468, 101 S.Ct. at 1875-76 (Fifth Amendment requires, among other things, that a capital murder defendant be warned that any statement he makes during a psychiatric examination may be used against him at the punishment phase of his capital murder trial); Wilkens v. State, 847 S.W.2d 547, 552-554 (Tex.Cr.App.1992); Hernandez v. State, 805 S.W.2d 409, 411-12 (Tex.Cr.App.1990), cert. denied, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed;2d 726 (1991). The record from the punishment phase of applicant’s 1981 trial reflects Dr. Griffith described the warnings given to applicant in the following manner:
“First of all, we did inform the Defendant, which he knew already that — what he was coming for, for a psychiatric examination; that this was ordered by Judge Hopkins. We informed him that a report would have to be sent to the Court stating our findings so far as whether he was competent to stand trial, whether he, in our opinion, was sane or insane at the time of the alleged offense; that in the State of Texas, there is no confidentiality so that anything he might say could be used against him, or could be used for him at some later date in the courtroom ... [T]hat he had the right to remain silent, and he was informed that he had the right to talk with his attorney about this, which he had done.”
Attached to the State’s reply brief in this habeas corpus proceeding is an affidavit by Dr. Grigson explaining that he and Dr. Griffith interviewed applicant together, and that Dr. Grigson also provided warnings to applicant prior to the interview. Because Dr. Grigson did not testify at applicant’s 1981 trial, the trial record is devoid of the warnings he gave to applicant. We, therefore, remanded this case to the trial court for an evidentiary hearing to determine whether any deficiency in the warnings provided by Dr. Griffith was cured by the warnings provided by Dr. Grigson. At this hearing, Dr. Grigson testified he gave applicant the following warnings:
“Well, I felt like the number one warning was that the district attorney is the one that had filed the motion and requested it. I felt like that was extremely important, it was not coming from this defense attorney but from the district attorney who was prosecuting him. Next I told him that it was not confidential because the report would be sent back and it would be discussed. I told him that he did have the *191 right to refuse the examination, he had the right to remain silent, he had the right to stop at any time he wanted to.... And the purpose was to examine him in three areas, competency, sanity, and dangerousness .... I told him dangerousness meant whether or not he represented a continuing threat to society.”
I
Applicant committed the offense in 1980. Applicant’s case was' tried in 1981. Estelle v. Smith also was decided in 1981. This Court disposed of applicant’s direct appeal on April 8, 1987, and the United States Supreme Court denied applicant’s petition for writ of certiorari on January 17, 1989. Applicant filed his first application for habeas corpus relief in this Court on April 26, 1989. Although this application contained many claims, it did not contain an Estelle v. Smith claim. This Court denied relief on applicant’s first writ application on April 28, 1989. Applicant finally got around to raising an Estelle v. Smith claim when he filed a second application for habeas corpus relief on June 13,1990.[1] He filed this, his third, application for writ of habeas corpus relief on December 20,1994.
Applicant has not explained why he waited nine years after Estelle v. Smith was decided before first asserting an Estelle v. Smith claim in his second writ application in June 1990. He made no attempt to raise the claim while his direct appeal was pending in this Court even though Estelle had been decided for six years when this Court finally disposed of applicant’s direct appeal. Applicant also failed to raise the claim in April 1989 when he filed his first writ application. And, after this Court disposed of applicant’s second writ application in March 1992, applicant waited over two years to reassert the claim in this writ application.
Under these circumstances, we hold applicant waived any right he may have had to complain in this proceeding about an Estelle v. Smith violation at his 1981 trial. See Ex parte Carr, 511 S.W.2d 523, 525 (Tex.Cr.App. 1974) (if petitioner has grounds which would justify granting habeas corpus relief, he should present them with dispatch for determination, rather than doling them out one-by-one in repeated attempts to have both the benefits of relief and the fleeting pleasures of harassing those who confine him); cf. Article 11.071, Section 5(a), V.A.C.C.P.; Tex.R.App. Proc. 52(a) (to preserve a complaint for appellate review, the complaining party must, among other things, present a timely request). This case presents a classic example of a capital inmate abusing the writ to delay his execution. See Carr, 511 S.W.2d at 525; compare Felker v. Turpin, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (doctrine of abuse of the writ refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions).
The State’s (and society’s) valid and legitimate interest in the finality of this fifteen-year-old conviction and death sentence outweighs applicant’s interest in raising an Estelle v. Smith claim now especially since this claim does not affect the factual question of applicant’s guilt or innocence, the reliability of the jury’s findings on the special issues at applicant’s 1981 trial, or the voluntary nature of applicant’s statements to the psychiatrists. See Ex parte Goodman, 816 S.W.2d 383, 387 (Tex.Cr.App.1991) (Clinton, J., concurring);[2] Black v. State, 816 S.W.2d 350, 375-79 (Tex.Cr.App.1991) (Clinton, J., dissenting); Ex parte Dutchover, 779 S.W.2d 76, 78-79 (Tex.Cr.App.1989) (Clinton, J., concurring); cf. Brecht v. Abrahamson, 507 U.S. 619, 634-39, 113 S.Ct. 1710, 1720-22, 123 L.Ed.2d 353 (1993) (liberal allowance of the writ encourages habeas petitioners to relitigate their claims on collateral review). No one is claiming applicant’s statements to the psychiatrists resulted from torture or some other process that overbore applicant’s will not to *192 speak. Holding that applicant waived his Estelle v. Smith claim is not a “grievous wrong” in this case. Cf. Brecht, 507 U.S. at 637, 113 S.Ct. at 1721 (historic meaning of habeas corpus is to afford relief to those whom society has “grievously wronged”).
II
In addition, Griffith’s warnings to applicant were sufficient to comply with Estelle v. Smith. Griffith testified he told applicant that applicant’s statements “could be used against him” at some later date “in the courtroom.” This sufficiently informed applicant that his statements could be used against him at the punishment stage of his capital murder trial since that went on “in the courtroom.” Moreover, a warning that a statement “may be used against” a defendant conveys that that statement could be used at the punishment stage of a capital murder trial. Therefore, we do not even need to consider whether Grigson’s warnings cured any deficiencies in the warnings provided by Griffith to conclude applicant’s Estelle v. Smith claim is without substantive merit.[3]
And, Grigson also told applicant that he was examining applicant for “dangerousness” which meant “whether or not he represented a continuing threat to society.” Taken together, Griffith and Grigson effectively informed applicant that “any statements he made to them could be used against him at the punishment stage of his capital murder trial on the issue of future dangerousness.” This more than complies with Estelle v. Smith.
We deny applicant’s request for habeas corpus relief.
MEYERS, J., concurs.

. This Court erroneously determined in that cause that the Estelle v. Smith claim had been raised by applicant and decided adversely to him on direct appeal.

. For example, in Ex parte Goodman, Judge Clinton wrote:
"Just as in the context of the law of contemporaneous objection, analysis of what is cognizable on collateral attack should be informed first and foremost by the State’s legitimate interest in the integrity and finality of convictions. The appellate process is past. Any standard for deciding what claims to entertain in a collateral proceeding should be rigorous.” Goodman, 816 S.W.2d at 387 (Clinton, J., concurring).

. Applicant claims we may not consider Grig-son’s testimony from the habeas evidentiary hearing in determining whether the collective warnings he received complied with Estelle v. Smith. He claims the question is whether the trial record reveals the State sustained its burden of proof to permit the introduction of the evidence obtained, and that a prerequisite to admissibility cannot be satisfied fifteen years after the fact.
We disagree. Applicant’s case was tried before Estelle v. Smith was decided; therefore, it would have been impossible for the State to know with any certainty what the prerequisite to the admissibility of applicant's statements was. Moreover, applicant did not claim at trial the Fifth Amendment required the warnings the Supreme Court later decided the Fifth Amendment required in Estelle v. Smith. See Gardner, 733 S.W.2d at 202-03. And, applicant did not raise an Estelle v. Smith claim until 1990 approximately nine years after Estelle v. Smith was decided. When an applicant waits this long to raise an Estelle v. Smith claim, the State may establish the prerequisite to admissibility fifteen years after the fact.