**Ex parte Roberto Moreno RAMOS.**

No. 35938–01.

Court of Criminal Appeals of Texas,
En Banc.

July 15, 1998.

ORDER

WOMACK, Judge, delivered the order of the Court, which McCORMICK, Presiding Judge and MANSFIELD, PRICE and HOLLAND, Judges, joined.

The applicant seeks post-conviction habeas corpus relief from a judgment imposing a sentence of death. The statute which was enacted in 1995 to regulate the procedure for these cases requires the application to be filed within 180 days. See Code of Criminal Procedure article 11.071, § 4(a). The convicting court may find good cause to file the petition as late as 90 days thereafter, but "an applicant cannot establish good cause for untimely filing of an application filed after the 91st day after the applicable filing date." *Id.,* § 4(f).

In this case the convicting court found good cause to allow late filing. It entered an order on May 22, 1997 "grant[ing] an extension of 90 days to file an application for writ of habeas corpus, until August 22, 1997." Record at 231. The order was internally inconsistent, because a period of 90 days would have ended on August 20, while a period which ended on August 22 would have been 92 days long. The applicant filed his application on August 22. The convicting court has found that the applicant acted in good-faith reliance on the order of May 22. Record at 273. The State recommended that, based on the equities, the convicting court address the merits of the application. See Record at 1096. The convicting court entered findings of fact and conclusions of law on the merits of the application.

Literally applied, Article 11.071, Section 4(f) would make it impossible for the applicant to establish good cause for his untimely filing. In these circumstances, in which the

applicant relied in good faith on a mistaken calculation which was entered by the convicting court without objection, we believe that such a literal application would deny the applicant the due course of the law of the land. See Texas Constitution, article I, § 19.[1]

Two separate opinions say there is no difference between this case and *Ex parte Smith*, 977 S.W.2d 610 (Tex.Cr.App.1998). *See post* at 618 (Baird, J., concurring) ("the identical situation ... presenting the identical issue"); *post* at 618–619 (Overstreet, J., dissenting) (finding a "common thread" in the cases and "inconsistency" in their dispositions). They ignore the crucial fact which distinguishes the cases: Ramos met an incorrectly-calculated deadline that the court had entered and on which he relied in good faith; Smith did not. See *Ex parte Smith, supra*, 977 S.W.2d at 610 ("There is no claim that the applicant [Smith] relied in good faith on an improper order of the trial court. *Cf. Ex parte Ramos* ").

A concurring opinion says that in *Ex parte Smith, supra*, we held that "a habeas court ... lost jurisdiction when the application was untimely," and therefore we cannot have jurisdiction in this case. See *post* at 618 (Baird, J., concurring) (citing *Ex parte Smith, supra* ). The dismissal of the application in *Ex parte Smith* was not on account of a want of jurisdiction. This Court has jurisdiction of Smith's and Ramos's applications. We held in *Ex parte Smith* that the statute which regulates the exercise of our jurisdiction requires the dismissal of the late-filed application. In the case now before us, we hold that, on these specific facts, the regulatory statute cannot be constitutionally applied to require the dismissal of the application. Therefore we shall address the merits of the application.

Five claims involving jury selection and a claim involving the court's charge to the jury at the guilt stage of the trial have already been raised and rejected on the direct appeal from this conviction. See *Ramos v. State*, 934 S.W.2d 358 (Tex.Cr.App.1996). They will not be addressed on habeas corpus.

■ Two claims concern the court's charge to the jury at the punishment stage of the trial. These claims should have been, but were not, raised on the appeal. Habeas corpus will not lie as a substitute for appeal. *See Ex parte Gardner*, 959 S.W.2d 189, 198–200 (Tex.Cr.App.1998). The claims will not be addressed.

The application is denied.

BAIRD, J., filed a concurring opinion.

OVERSTREET, J., filed a dissenting opinion.

KELLER, J., filed a dissenting opinion.

MEYERS, J., dissented without opinion.

BAIRD, Judge, concurring.

The order of the Court correctly sets forth the series of events resulting in the untimely filing of the instant application. I concur with the decision to deny relief but write separately to demonstrate the obvious inconsistency between *Ex parte Smith*, 977 S.W.2d 610 (Tex.Cr.App.), and the instant case.

The *Smith* Court refused to reach the merits of the untimely filed habeas application. The unmistakable mandate from *Smith* was "an applicant cannot establish good cause for untimely filing of an application filed after the 91st day after the applicable filing date." *Ibid.,* (citing Tex.Code Crim. Proc. Ann. art. 11.071 § 4(f)). I dissented, believing the Court should have exercised its original jurisdiction to reach the merits of the habeas application.[1]

---

1. "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19.

1. In *Smith, supra*, Judge Womack intimated the dissenters betrayed our oaths of office because

we believed the application should be considered. Judge Womack stated:

... Our oaths are to uphold the constitutions and laws of this country and state; they are not a commission to do what a majority of us think is fair. The law was passed by the legislature and approved by the governor, in ac-

Now, the present majority resolves the identical situation in an entirely different way. They acknowledge that when Tex.Code Crim. Proc. Ann. art. 11.071 is "literally applied," there can be no good cause for the reason the application was untimely filed. However, such a "literal application, would deny applicant the due course of law of the land." Therefore, the majority purports to address the merits of applicant's claims and denies relief. The majority's advancement of the due course of law theory is devoid of any citations or legal analysis.

What is the law in one case is entirely different in another case presenting the identical issue. How can a habeas court which lost jurisdiction when the application was untimely, *see Smith*, retain jurisdiction when the statutory period has elapsed? It simply cannot. To hold as the present majority does would permit the parties to confer jurisdiction by agreement—a proposition that has been settled contrary to the present majority for decades.[2]

The only jurisdiction under which we may consider the merits of the instant application is our original jurisdiction. Tex. Const. Art. V, Sec. 5. Despite their sleight of hand antics, the majority correctly determines the merits of applicant's claims do not entitle him to relief. To that decision, I concur, but their delivering two totally conflicting opinions on the same day is shameful and will only lead to confusion in the future.

OVERSTREET, Judge, dissenting.

Today the majority gives a new meaning to the lady with a blindfold holding the scales of justice, as it dispatches three indigent death row inmates toward the execution chamber without meaningful review of their habeas claims. *Ex parte Laroyce Lathair Smith*, No.

36,512–01 (Tex.Cr.App. delivered July 15, 1998), *Ex parte Robert Moreno Ramos*, No. 35,938–01 (Tex.Cr.App. delivered July 15, 1998), and *Ex parte Paul Richard Colella*, No. 37,418–01 (Tex.Cr.App. delivered July 15, 1998), *Smith* by written opinion, *Ramos* and *Colella* by written orders. My previous dissent in *Smith* is withdrawn and replaced with this dissenting opinion.

To dismiss *Smith* and *Colella* as abuse of writ because their lawyers untimely filed writ applications borders on barbarism because such action punishes the applicant for his lawyers's tardiness. It would be fair to punish the attorney by not providing payment. It would be fair to punish the attorney by not providing payment. It would also be fair to the applicant, and serve the concept of justice better, to appoint a new lawyer and reinitiate the timetable. Must the indigent Texas Death Row inmate suffer the ultimate punishment of death without benefit of State habeas review because of his lawyer's tardiness? A majority of this Court says "yes," but I say "no," even if I stand alone. I shall address all three of these cases together.

One common thread in all three cases is that applicants are indigent death row inmates who requested the appointment of a lawyer, this Court appointed lawyers to represent them, and all three lawyers filed applications after the 90th day, which is clearly outside of the time limit set out in the statute, Article 11.071, V.A.C.C.P. *Smith* is dismissed as not timely filed because of a 9-day delay. *Colella* is dismissed as not timely filed because of a 37-day delay. *Ramos* is denied on the merits even though there is a 2-day delay in filing, with such delay being excused on Texas Constitutional grounds of due course of law because the lawyer relied on incorrect instructions from the trial court

cordance with our constitutional form of government. *The law is clear: this court shall dismiss this application because it was filed late.* If the law is barbarous, the legislature should repeal it or the governor should commute or pardon those who are subjected to it. In the meantime, *we must follow it.* *Smith*, at 611. (emphasis supplied). The majority opinion here makes no meaningful distinction between the instant case and *Smith*.

**2.** In *State v. Roberts*, 940 S.W.2d 655, 657 (Tex. Cr.App.1996) this Court held, " . . . subject matter

jurisdiction cannot be conferred by agreement of the parties; jurisdiction must be vested in a court by constitution or statute."(citing *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex.Cr.App.1980)); and, *Ex parte Caldwell*, 383 S.W.2d.587, 589 (Tex.Cr. App.1964) If the parties cannot agree to confer jurisdiction they should not be able to confer jurisdiction by mistake as the majority now permits. *Ante*, at 617, slip op. pg. 3.

instead of reading and understanding the law himself. Apparently in some situations, death row inmates are due a little more due course of law than in others.

In *Smith,* Judge Womack is critical of me because I speak and write of being fair. He also pays lip service to "[o]ur oaths are to uphold the constitutions and laws.... The law is clear: this court shall dismiss this application because it was filed late." *Smith, supra,* at 611, slip op. at 4. My question of Judge Womack can be answered "yes" or "no" - Was the application in *Ramos* filed late? The answer leaps out as "yes." The Judge who said the law is clear now deviates. At least Judge Keller, even though I disagree with her position, has the courage to interpret the law the same way each time. The Court seems unwilling to effectuate the entire will of the Legislature when it enacted Article 11.071. It goes without saying that the Legislature wanted to speed up the process and add finality to the disposition of death penalty cases. However, I do not believe that the Legislature intended to throw the Constitution on its head and fairness out the door. The majority also seems unwilling to take into consideration how its disposition of these applications affects the ability of the death row inmates to seek federal review. Apparently, pursuant to federal law, including The Anti–Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2261 et seq., death penalty applicants who seek federal habeas review are subject to procedural default holdings if they do not properly pursue their claims to a resolution before this Court. *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

If a lawyer's actions deny an indigent death row applicant meaningful review of his claims, then I question whether the inmate standing in line to be executed has received effective assistance of counsel. Commonsense tells me that if you do not have effective assistance of counsel, with all due respect, I consider that worse than having no lawyer at all because having an ineffective lawyer gives a sense of legitimacy to the proceeding, yet the degree of assistance may be equivalent to not having a lawyer at all.

The only thing consistent about the majority's disposition of these cases is its inconsistency, the apparent need to justify its disposition in the cases without regard to the legislative intent of the statute and/or fairness, and a reckless disregard of the law based on its own stare decisis. Without a doubt, *Smith* and *Colella* are being treated differently than *Ramos.* Therein lies the criticism of death penalty litigation. Some are being treated differently than others, and today the Court clearly throws gasoline on the fire.

For these reasons, I dissent to the disparate treatment of the indigent death row inmates of Texas and specifically to the disposition of *Smith* and *Colella.* I concur only in the decision to deny relief in *Ramos.*

KELLER, Judge, dissenting.

For one primary reason, and two secondary reasons, this application should be dismissed. I therefore dissent to the majority opinion, which addresses the merits of the claim.

This writ application was filed too late to comply with the requirements of Tex.Code Crim. Proc. Ann. art. 11.071. And, as the majority acknowledges, "Literally applied, Article 11.071, Section 4(f) would make it impossible for the applicant to establish good cause for his untimely filing." (op. at 616). Our only course under the statute is to treat the application as an untimely or subsequent application under Section 5. In this case applicant does not meet the requirements of Section 5 for consideration of the merits of such an application. As such, the statute tells us that we "shall issue an order dismissing the application as an abuse of the writ." The first and best reason we should dismiss the application is that the statute does not allow us to do anything else.

The majority finds a constitutional impediment to following the literal language of the statute. It determines that, because applicant relied in good faith on a mistaken calculation of the trial court, our failure to allow a good faith exception would deny applicant

due course of law under the Texas Constitution. Article I, Section 19 of our Constitution provides that, "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." It seems to me that the law of the land here relevant is art. 11.071 and the Constitution itself.

Article 5, Section 5, of the Texas Constitution provides, in relevant part:

"*Subject to such regulations as may be prescribed by law,* the Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, . . ." (Emphasis supplied).

In *Ex parte Davis,* 947 S.W.2d 216, 223 (Tex.Crim.App.1996) (McCormick, P.J., concurring), a majority of this Court determined that article 11.071 is the exclusive means by which this Court may exercise its original habeas corpus jurisdiction in death penalty cases. Since Article 5, Section 5, of the Constitution and Article 11.071 are the relevant law, and both are complied with only by dismissing the application, I do not see how applicant would be deprived of due course of law by the Court doing so.

A second reason to dismiss the application concerns the majority's belief that good cause exists in this case. The majority concludes that there is good cause because applicant filed the application late in reliance on an erroneous time calculation by the trial court. The record shows that applicant *asked* the trial court to extend the time for filing until August 22. The miscalculation was applicant's—not the court's. Faulting the trial court under these circumstances is inappropriate and allows applicant to benefit from tardiness that is of his own creation.

A third reason to dismiss the application concerns the notion that it "violates the spirit of article 11.071" [1] or that it "borders on barbarism" [2] for us to refuse to consider the merits of a capital murder writ application simply because of a missed deadline. An unfortunate practice has arisen regarding "extensions" of time to file. *The statute does not allow a court to grant an extension of time to file.* The statute requires that the application be filed within 180 days from the appointment of counsel. If the application is filed after 180 days, the application is presumed untimely unless the applicant establishes good cause (defined as "particularized justifying circumstances") for the late filing. If good cause is established, the trial court is then to proceed as if the application had been timely filed. Thus, the statute does not contemplate extensions of time. Instead, it allows an applicant to establish *after a late application is filed* that there was good cause to file late. And it provides what seems to me to be a generous buffer zone— ninety days—for late filing.

Here, counsel was appointed on November 22, 1996, so applicant was required to file the application by May 21, 1997. On May 22, 1997, applicant requested the unauthorized extension. Applicant could have filed an untimely application as late as August 19, 1997, if the trial court had found good cause for the late filing. He filed it on August 22, 1997, ninety-three days after it was due.

The legislature clearly was aware of the dangers of imposing a strict timetable, and crafted the statute to avoid any possible unfairness that might have resulted from imposing absolute time limits. Not only does the statute allow a 90–day grace period for non-compliance with the time limits, it requires the trial court to hold a good cause hearing within ten days of the 180–day due date if the application is not timely filed. The legislature took into account the contingencies of good cause, miscalculation of time limits, and missed deadlines. But it also imposed an absolute prohibition against exceeding the 90–day grace period. Our lawmakers intended to create an absolute deadline, they were entitled to do so, and it was not unfair for them to do so. And it is in no way unfair for our Court to abide by the guidelines the legislature has imposed.

---

1. *Ex parte Smith,* 977 S.W.2d 610 (Tex.Crim.App. 1998) (Baird, J., dissenting)

2. *Ex parte Smith,* 977 S.W.2d 610 (Tex.Crim.App. 1998) (Overstreet, J., dissenting)

I would dismiss this application as an abuse of the writ. I respectfully dissent from the decision to do otherwise.

