# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 10, 2013

No. 12-70025

Lyle W. Cayce
Clerk

ANTHONY DEWAYNE DOYLE,

Petitioner–Appellant,

versus

WILLIAM STEPHENS, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:08-CV-138

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Anthony Doyle was convicted of capital murder and sentenced to death for the robbery and fatal beating of Hyun Cho.  After exhausting his direct appeals

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-70025

and petitions for state habeas corpus relief, Doyle petitioned for federal habeas relief, which was denied. He seeks a certificate of appealability ("COA") pursuant to 28 U.S.C. § 2253. We deny the request.

I.

In 2003, Doyle placed an order for delivery with the Chaha Donut shop, disguising his voice and saying his name was Mary. When Cho arrived to deliver the food, Doyle beat her to death with a baseball bat, put her body into a trash can, and attempted to clean the blood from the walls and floor. He took her car, cell phone, and credit cards and drove to meet his friends, to whom he indicated he had murdered someone, stating that he was not "playing" anymore. They attempted to use Cho's credit cards to make purchases.

When Doyle learned that police had found Cho's body, he fled. Police searched the house where he had committed the murder and found his blood-stained clothes, blood spatters on the floor and walls, marks from the trash can's wheels, and other evidence. Doyle later abandoned Cho's car at a carwash and threw her possessions into a nearby dumpster. The police found those items and the original receipt for the donut delivery.

Doyle's mother tried to convince him to come to the police station to talk to officers, and although he agreed, he never did but was arrested shortly thereafter. He eventually orally confessed to the crime under police questioning, taking more than two hours to write a ten-page confession.

Doyle was convicted and sentenced to death. During the punishment phase of the trial, significant evidence was produced by prosecution and defense pertaining to Doyle's character and history. The prosecution presented evidence of Doyle's violent past, including numerous violent outbursts in school and at home; there was evidence of Doyle's ties to a violent gang. The defense presented numerous witnesses who testified to Doyle's good character and difficult

2

No. 12-70025

upbringing. On cross-examination, one of the defense experts admitted that Doyle was not mentally retarded, had a normal IQ, and understood right from wrong.

Doyle initially appealed to the Texas Court of Criminal Appeals ("TCCA"), alleging eleven points of error; his sentence was affirmed. His challenges focused exclusively on two areas: the members of the jury pool and the constitutionality of the death penalty. *See Doyle v. State*, 2006 WL 1235088 (Tex. Crim. App. May 10, 2006), *cert. denied*, 549 U.S. 976 (2006). The TCCA denied Doyle's petition for state habeas relief. *See Ex parte Doyle*, 2008 WL 217985 (Tex. Crim. App. Jan. 23, 2008). Doyle next filed a federal habeas petition alleging eight claims, which was denied.

## II.

A COA is appropriate only where a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He must also demonstrate that "reasonable jurists" could agree, or at least debate, that the denial of habeas relief was erroneous "or that the issues presented [are] adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citations omitted). We apply the strict standards in 28 U.S.C. § 2254(e), which provides that facts decided by the state court are controlling unless rebutted by clear and convincing evidence.

## III.

Doyle requests a COA on three of the claims denied by the district court. First, he contests the voluntariness of his confession and the admissibility of his statements made to friends (Claim 3). Second, he argues that he received ineffective assistance of counsel ("IAC") related to that claim (Claim 4). Finally, he claims that his sentence violates the Eighth and Fourteenth Amendments

because he was developmentally a juvenile (Claim 6).

## A.

Doyle's first claim is procedurally barred:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In the first place, Doyle never objected to the admission of the statements he made to his friends wherein he confessed his crimes. Second, though he objected to the voluntariness of his confession based on his mental state, he did not raise his current theory—coercion by the conditioning of state officials—at trial. Nor did he raise those issues on direct appeal. In his state habeas proceedings, the court found that Claim 3 could have been raised on direct appeal and that Doyle had thus defaulted on it. Texas bars all record-based claims not raised on direct appeal.[1] It also requires contemporaneous objection. We "ha[ve] consistently held that the Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review . . . ." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).

Doyle makes no real response to his default of Claim 3, nor does he attempt to demonstrate actual prejudice or good cause for the default. He instead urges that his IAC claim, Claim 4, is necessarily tied to the merits of Claim 3. That, however, does not satisfy Texas caselaw regarding the default,

---

[1] *See Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) ("'[T]he writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.'") (citation omitted).

so Doyle has procedurally defaulted as to the substantive issues of Claim 3, and we deny a COA.

## B.

Doyle's next contention, Claim 4, is that he received IAC in violation of the Sixth Amendment regarding a failure to object and preserve Claim 3. To establish IAC, a petitioner must show (1) that his counsel's performance was deficient to the extent that he failed to function as "counsel" and (2) that that deficient performance prejudiced his defense so much that it deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a "strong presumption" that counsel's actions "fall[] within the wide range of reasonable professional assistance." *Id.* at 689. Where, as here, the state court applied the standard in *Washington* and concluded that counsel was not ineffective, the test is whether the state court's decision was "contrary to, or an unreasonable application of" clearly established federal law. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

The first requirement of *Washington* was not met. Counsel explained that he purposefully did not challenge Doyle's confession after it had been admitted into evidence, because the lynchpin of the defense was that Doyle did not have the requisite *mens rea* for murder—specifically, Doyle only planned and attempted to rob rather than murder Cho.

Moreover, the claim Doyle seeks to advance regarding the voluntariness of his confession is without merit. Doyle maintains that counsel should have raised a claim that his oral and written confessions were the product of coercion, were involuntary, and thus violated his rights. He claims that a confession may be rendered coerced and involuntary based on the actions of those outside the immediate interrogation context. He contends that the "state actors" that coerced his confession included his school principal, a probation officer, and staff

at a juvenile correction agency in which he resided. Years before, he claims, those actors had taught him to confess his misdeeds, in the case of the school principal, and to talk to his peers about what he had done wrong and why, in the case of the juvenile corrections agency. Doyle was held in the principal's office, sometimes for hours, until he confessed to misbehavior attributed to him. While at the juvenile facility, he had participated in frequent "huddle ups" where the youths were encouraged to explore with their peers, in narrative form, what they had done wrong, which "exerted peer pressure to confess and conform." Those "coercive" activities inculcated in Doyle a habit of confession.

Doyle points to *Townsend v. Sain*, 372 U.S. 293 (1963), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), in support. The Court there held that, where a confession was the product of a "truth serum"-type drug, it was involuntary. *Id*. at 307–08. It did not matter that the state actor who had given the defendant the "truth serum" was different from the individual who interrogated him and that there was some slight separation in time between the administration of the drug and the confession. *Id*. Doyle argues that the previous cultures of concession imposed on him by state actors were the same type of pre-interrogation coercion found in *Townsend*.

That claim is an impermissible broadening of *Townsend* and plainly outside settled law. In *Townsend*, the truth serum was administered as part of the interrogation for the specific purpose of extracting information during the interrogation. *Townsend* stands for the principle that an interrogation will not be considered non-coercive just because the coercive aspects of the interrogation are delegated to an individual who does not ask any questions. The "coercion" Doyle complains of was far removed from his confession, both in terms of time and causation. Challenged police conduct must be "causally related to the confession." *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Where it is not, there "is simply no basis for concluding that any state actor has deprived a criminal

defendant of due process of law." *Id.*

There was no direct causal relationship between the state actors and Doyle's confession. Even assuming the actions of the principal and the counselors constitute relevant state action, they were too remote in time and were not at all proximately related to Doyle's confession. In *Townsend*, the truth serum was administered *for the purpose of* the interrogation by police officers and in contemplation of drawing out that specific confession. Under Doyle's theory, any action by a government employee that tended to encourage confession in general, no matter how remote in time to the confession challenged, would be sufficient to classify the confession as coerced. That interpretation strains law and reason.

Doyle's counsel was not ineffective for failing to raise that claim; it was a reasonable trial strategy to focus on the *mens rea*, and counsel did initially challenge the admissibility of the confession. Moreover, the state court's analysis hewed to settled standards for determining effectiveness of counsel. Doyle has not shown the denial of a constitutional right, and there is no room for reasonable jurists to debate. We therefore deny a COA on Claim 4.

## C.

Doyle's final claim, Claim 6, asks us to ignore clear Supreme Court precedent and inaccurately presents Eighth Amendment jurisprudence. Doyle contends that the Eighth Amendment prohibits applying the death penalty to one who is "developmentally" a minor. Doyle argues that, in spite of *Roper v. Simmons*, 543 U.S. 551 (2005), the Eighth Amendment forbids bright-line rules. The Court there held, however, as follows:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we

have discussed, however, *a line must be drawn. . . .*  The age of 18 is the point where society draws the line for many purposes between childhood and adulthood.  It is, we conclude, the age at which *the line for death eligibility ought to rest*.

*Id.* at 574 (emphasis added).

Doyle misinterprets *Simmons*.  He argues that the government and the state courts applied *Simmons* as though it had created a rule of *per se* constitutionality of death sentences for those over eighteen, but that is not so.  *Simmons* established a lower boundary:  No one under eighteen may be executed, meaning only that, based on that single metric, a defendant is not disqualified from receiving the death penalty.  The jury must still consider other factors during the punishment phase, including mitigating factors.

That correct interpretation is precisely what the state court applied and what the state here argues.  Doyle was over eighteen, so he cannot use *Simmons* as a shield.  He is entitled to and did present evidence of his age and purported psychological and developmental shortcomings as mitigating factors.[2]  He has not shown that he was denied a constitutional right, and there is no room for reasonable jurists to debate Claim 6.[3]

The request for a COA is DENIED.

---

[2] *See Johnson v. Texas*, 509 U.S. 350, 367 (1993) ("A sentencer in a capital case must be allowed to consider the mitigating qualities of youth in the course of its deliberations over the appropriate sentence.").

[3] Doyle asks us to undermine *Simmons* and adopt a new rule that it is the "developmental age," not the true age, that matters.  That is an unreasonable interpretation of *Simmons*, and Doyle's citations to *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 132 S. Ct. 2455 (2012), are entirely unhelpful.  In *Miller*, for instance, the Court again drew a bright line at eighteen as a *lower bound* for punishment.  *Miller*, 132 S. Ct. at 2460 ("We therefore hold that mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'").  The Court reiterated, though, the importance of considering all of the individual circumstances in fashioning a sentence.