**Opinion filed August 4, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00220-CV

_____

## DEBORAH BOWEN, Appellant

## V.

## THE STATE OF TEXAS AND DANA WHITE, Appellees

**On Appeal from the 32nd District Court**

**Fisher County, Texas**

**Trial Court Cause No. 3313-C**

## O P I N I O N

This appeal arises from a civil proceeding challenging a restitution lien. The restitution lien arose from a 2013 judgment in which the trial court ordered Appellant, Deborah Bowen, to pay $103,344 in restitution to Dana White for the crime of misapplication of fiduciary property. *See* TEX. CODE CRIM. PROC. ANN. art. 42.22 (West Supp. 2021); *see also id.* art. 42.037(m) ("An order of restitution

may be enforced by the state or a victim named in the order to receive the restitution in the same manner as a judgment in a civil action."). In 2020, Bowen filed a "Motion for Accounting as to Restitution and Release of Restitution Lien" wherein she asserted that the restitution order should never have been entered. Among other things, she sought an order declaring that the restitution lien was "void and unenforceable." In three issues, Bowen appeals the trial court's order denying her motion. We affirm.

*Procedural History*

The procedural history associated with this case is long and complicated. In September 2008, a Fisher County jury found Bowen guilty of first-degree misapplication of fiduciary property.[1] Bowen appealed her conviction to this court. *See Bowen v. State*, 322 S.W.3d 435 (Tex. App.—Eastland 2010) (*Bowen I*), *rev'd*, 374 S.W.3d 427 (Tex. Crim. App. 2012). The State alleged that Bowen appropriated trust property that exceeded $200,000 from White; however, we concluded that the evidence was only sufficient to show that Bowen appropriated $103,344 of trust property attributable to White. *Id.* at 442–43. We reversed the judgment of the trial court and rendered a judgment of acquittal. *Id.* at 443; *see Collier v. State*, 999 S.W.2d 779 (Tex. Crim. App. 1999) (holding that a court of appeals cannot reform a trial court judgment convicting a defendant of a greater offense when the evidence only proved a lesser-included offense).

---

[1]A person commits the offense of misapplication of fiduciary property "if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary. . . in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held." TEX. PENAL CODE ANN. § 32.45(b) (West Supp. 2021). When Bowen committed this offense, it was a first-degree felony to misapply property with a value of $200,000 or more. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, art. 1, § 1.01, sec. 32.45, 1993 Tex. Gen. Laws 3586, 3652–53, *amended by* Act of May 31, 2015, 84th Leg., R.S., ch. 1251, §§ 21, 30, 2015 Tex. Gen. Laws 4209, 4218, 4221 (current version at TEX. PENAL CODE ANN. § 32.45(c)(6)–(7) (West Supp. 2021)). It was a second-degree felony to misapply property with a value between $100,000 and $200,000. *Id.*

Subsequently, the State petitioned the Court of Criminal Appeals to review our decision in *Bowen I*. *See Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012) (*Bowen II*). The Court of Criminal Appeals granted the State's petition, and it ultimately overruled *Collier*. *Id.* at 432. The court agreed with our determination in *Bowen I* that the value of property misappropriated by Bowen from White was $103,344. *Id.* The court remanded Bowen's case to the trial court with instructions "to reform the conviction to reflect the felony of misapplication of fiduciary property in the second degree and to conduct a new punishment hearing." *Id.*

In compliance with the Court of Criminal Appeals' instructions, the trial court sentenced Bowen on March 6, 2013, to confinement for a term of seven years in the Institutional Division of the Texas Department of Criminal Justice. Additionally, the trial court ordered Bowen to pay the following: (1) $7,500 in fines, (2) $321.00 in court costs, and (3) $103,344 in restitution. With respect to the amount of restitution, the trial court specifically announced the amount of $103,344 in its oral pronouncement of Bowen's sentence.

Bowen appealed her 2013 sentence to our court. *See Bowen v. State*, 494 S.W.3d 181 (Tex. App.—Eastland 2015, pet. denied) (*Bowen III*). In her second appeal, Bowen asserted four issues: (1) the trial court abused its discretion when it denied her plea in bar because "our acquittal [in *Bowen I*] should stand and [Bowen] should not have been subject to further prosecution"; (2) "the trial court abused its discretion when it denied her motion for new trial on the ground that her right to due process had been violated"; (3) "the evidence was insufficient to support a first-degree felony conviction"; and (4) "the evidence is also insufficient to support a second-degree felony." *Id.* at 184–86. In *Bowen III*, we overruled each of Appellant's issues and affirmed the judgment of the trial court. *Id.* at 186.

Seven years after the 2013 restitution order, Bowen filed a Motion for Accounting as to Restitution and Release of Restitution Lien. Among other things, Bowen sought a determination from the trial court that she had paid the entire balance of the restitution due White prior to the trial court imposing it on March 6, 2013, as a part of her judgment of conviction. The trial court held a hearing on Bowen's motion in 2020. In addition to attorneys for Bowen, the district attorney and an attorney for White participated at the hearing.[2] The trial court denied Bowen's motion. The trial court also entered findings of fact and conclusions of law. This appeal followed.

*Background Facts*

As it pertains to Bowen's criminal proceedings, we believe the opinion from the Court of Criminal Appeals adequately sets forth the necessary background facts:

> Appellant's father died in 2001. Her father's will established a family trust, and Appellant's mother was named as the primary beneficiary. The trust was to terminate at her mother's death, and the trust assets were to be distributed equally, per stirpes, to Appellant and her brother, Jackie. Jackie predeceased his mother, leaving three children. Appellant was appointed co-trustee in 2004. The balance of the trust at the time of appointment was $620,065. Appellant distributed the entire balance of the trust to herself when her mother died, rather than distribute one-half of the assets to Jackie's children, as required by the trust provisions. Jackie's daughter, Dana White, had power of attorney to act on behalf of her two brothers. Appellant was charged with misapplication of fiduciary property owned by or held for the benefit of White for the value of $200,000 or more. TEX. PENAL CODE § 32.45(b) & (c)(7). She was convicted by a jury, sentenced to eight years in prison, and ordered to pay a fine and restitution to White and her brothers.

---

[2]White filed an Appellee's Brief in this case. However, the State did not file a brief.

4

*Bowen II*, 374 S.W.3d at 428. While Bowen's criminal proceedings were pending, two separate civil cases involving Bowen were ongoing. The first civil case was Cause No. 5975 (the "Parnice Estate Litigation"), and the second was Cause No. 5856 (the "Jackie Estate Litigation"). Bowen was the defendant in both cases. However, she also asserted claims of her own in both cases against the estates.

In October 2011, while *Bowen I* was still pending before the Court of Criminal Appeals, a settlement was announced in the Parnice Estate Litigation. As dictated into the record by one of the attorneys, the settlement provided as follows:

> In that regard, Your Honor, the Defendant (Bowen) has agreed to convey to the Plaintiffs (Dana White and her siblings) what we call the 640-acre tract which is – that's more or less – the deed would indicate there's a few more acres than that. But, I think for reference purposes, we'll call it the 640-acre tract or the Section as it's called.

> In addition, the 220 – acre tract and, finally, the 166-acre tract which is called the Plumb creek property, the Defendant (Bowen) will retain one-half interest in the mineral and / or royalty payments on all the above described properties.

> The heirs, the Plaintiff Douglass heirs (Dana White and her siblings), the Plaintiff will convey to the Defendant, Debbi Bowen all of their interest in the other real property that formed a part of the Estates of Parnice Douglass and Alfred P. Douglass, and all the property awarded to the Plaintiffs in the judgment nunc pro tunc in the Estate of Jackie L. Douglass, deceased.

> Now all personal property, Your Honor, that's in possession of the parties currently will be their separate property. And everyone agrees to execute the necessary documents to effectuate that agreement.

> The Douglass heirs (Dana White and her siblings) will – the Plaintiffs will have and keep 13,500 dollars which has previously been garnished.

> The Douglass heirs (Dana White and her siblings) will – the Plaintiffs agree to execute a release of judgment obtained in the Jackie L. Douglass case and dismiss that case with prejudice, as well as this case currently.

Following the settlement agreement in 2011, Bowen and White executed documents enacting the terms of the settlement agreement. Notably, two of these documents were global releases. White executed one in favor of Bowen, and Bowen executed one in favor of White.

In September 2019, a restitution lien was filed in the real property records of Fisher County. Sometime after the restitution lien was filed, Bowen executed a mineral lease. The lease provided that Bowen was to receive a 1/5 royalty and a $75,000 bonus. Bowen asserted that the restitution lien constituted a cloud on her property interests that affected her rights under the mineral lease. Bowen initiated this suit to seek the release of the restitution lien and to recover any funds that she paid toward restitution while on parole.

*Analysis*

In Bowen's first and second issues, she challenges the factual and legal sufficiency of four of the trial court's findings of fact. The challenged findings of fact provide as follows:

> 9. The Parnice Estate Litigation and the Jackie Estate Litigation are not connected with or a part of the facts and circumstances giving rise to Bowen's conviction herein.

> 10. On October 11, 2011, a Settlement Hearing was held in the Parnice Estate Litigation. The settlement announced in the Parnice Estate Litigation is outlined in the transcripts as follows . . . .

> 14. The Global Release executed by White as a result of the Settlement Hearing in the Parnice Estate Litigation does not reference or include the Trust (or the Estate of Alfred Douglass) that is at the center of Bowen's conviction herein. Specifically, it states:

> DANA WHITE . . . Plaintiffs in the above entitled and numbered cause (being Cause No. 5975, the Parnice Estate Litigation), hereby releases, discharges, and forever holds harmless DEBORAH CAROL BOWEN, Defendant, and her husband, Robert Bowen, from any and all claims,

6

demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case arising from or related to the events and transactions which are the subject matter of these lawsuits.

15. Defendant did not appeal her sentence herein, and specifically, did not appeal restitution of $103,344.00 payable to Dana White, the victim of the offense.

In her third issue, Bowen challenges many of the trial court's conclusions of law. The thrust of Bowen's contentions on appeal are that the trial court erred by determining that the settlement that Bowen reached with White in 2011 was not related to the criminal case. Thus, Bowen essentially asserts the trial court erred by imposing restitution of $103,344 on March 6, 2013, when it subsequently sentenced Bowen for second-degree misapplication of fiduciary property.

When reviewing the sufficiency of the evidence to support the trial court's express or implied findings, we apply the same standards of review that apply to a jury's verdict. *See MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009) (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)).

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it "must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *accord Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989). In reviewing a "matter of law" challenge, we first examine the record for evidence that supports the finding, and we ignore all evidence to the contrary. *Francis*, 46 S.W.3d at 241 (citing *Sterner*, 767 S.W.2d at 690); *see City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). If no evidence supports the finding, we then examine the entire record to determine if Appellant's contrary position is established as a matter of law. *Francis*, 46 S.W.3d at 241.

7

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Id.* at 242. "The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* We do not pass upon the witnesses' credibility or substitute our judgment for that of the trier of fact, even if the evidence would support a different result. *Gonzalez v. McAllen Med. Ctr., Inc.*, 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

We begin our analysis with Bowen's challenge to the trial court's fifteenth finding of fact because it is dispositive of this appeal. Finding of fact no. fifteen states that "[Bowen] did not appeal her sentence herein, and specifically, did not appeal restitution of $103,344 payable to Dana White, the victim of this offense." As pointed out by Bowen, the first clause of this finding of fact is incorrect because she appealed her 2013 sentence as reflected by our opinion in *Bowen III*. However, the remainder of the finding is correct. Bowen concedes that in *Bowen III*, she did not challenge the amount of restitution ordered by the trial court.[3] She contends that this omission is of no consequence because she challenged "whether she should have been sentenced at all." Bowen also asserts that she made reference to the amount of restitution in her "statement of the case" in the brief that she filed in *Bowen III*.

At the hearing on Bowen's motion for accounting, she offered the reporter's record from the 2013 sentencing hearing as an exhibit. The 2013 sentencing hearing

---

[3]We also take judicial notice that Bowen did not challenge the restitution order in her direct appeal in *Bowen III*. *See Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987) ("[A]n appellate court may take judicial notice of its own records in the same or related proceedings involving same or nearly same parties.").

devoted a great deal of attention to Bowen's contention that she did not owe any restitution to White as a result of the settlement in 2011. In this regard, she called one of her civil attorneys to testify at the sentencing hearing. Bowen's attorney testified that Bowen used property that she inherited from her mother to settle disputes arising from the Alfred Douglass trust. He opined that the 2011 settlement applied to White's restitution claim in the criminal case.

At the end of the 2013 sentencing hearing, the trial court included in its oral pronouncement of sentence its order for Bowen to pay restitution to White in the amount of $103,344. *See Bailey v. State*, 160 S.W.3d 11, 16 (Tex. Crim. App. 2004) (Cochran, J., concurring) ("[R]estitution is an adjunct to punishment for a criminal offense and must be imposed, if at all, at the time of sentencing."). The trial court also included the restitution amount in its judgment. *See* CRIM. PROC. art. 42.01, §1(25) (West Supp. 2021) (providing that a judgment of conviction "shall reflect" the amount of restitution that the trial court orders, "[i]n the event that the court orders restitution to be paid to the victim").

Thus, at the 2013 sentencing hearing, Bowen raised her contention that she no longer owed restitution as a result of the 2011 settlement. Furthermore, the trial court disagreed because it ordered restitution during its oral pronouncement of sentence. Accordingly, Bowen had the opportunity in her appeal in *Bowen III* to challenge the restitution ordered by the trial on the same basis that she is asserting in this appeal. *See Burt v. State*, 445 S.W.3d 752, 760 (Tex. Crim. App. 2014) (noting that the defendant has the opportunity to challenge the amount of restitution ordered if the defendant is told the specific restitution amount in open court); *see also Riles v. State*, 452 S.W.3d 333, 337 (Tex. Crim. App. 2015) (because the defendant had knowledge of an order to pay attorney's fees at the time deferred adjudication was imposed, he could have challenged the sufficiency of the evidence

supporting the payment of the fee in a direct appeal from the initial order for deferred adjudication).

At least two of our sister courts have concluded that a complaint about an order to pay restitution must be raised in a direct appeal from the proceeding wherein the restitution is imposed. *See Cordero v. State*, No. 12-12-00365-CR, 2013 WL 3976048, at *3 (Tex. App.—Tyler July 31, 2013, pet. ref'd) (mem. op., not designated for publication); *In re Whiddon*, No. 03-12-00361-CV, 2012 WL 2742285, at *1 (Tex. App.—Austin July 3, 2012, orig. proceeding) (mem. op., not designated for publication). *Cordero* involved an appeal from a judgment adjudicating guilt after deferred adjudication. 2013 WL 3976048, at *1. The court held that the defendant should have raised his complaint about the restitution order in an appeal from the order placing him on community supervision rather than waiting until the subsequent proceeding adjudicating his guilt. *Id.* at *3. *Whiddon* involved an inmate bringing a mandamus action seeking to declare a previous restitution order invalid. 2012 WL 2742285, at *1. The court held that "[a] complaint relating to a restitution order must be made at the time it was imposed or on direct appeal from the judgment of conviction." *Id.* (citing *Ex parte Pena*,[4] 71 S.W.3d 336 (Tex. Crim. App. 2002)). The same principle applies to the circumstances in this case—Bowen was required to raise her contention about the effect of the 2011 settlement on the amount of restitution that she owed White in her direct appeal from the 2013 sentence in *Bowen III*. Her failure to do so precludes her challenge filed over seven years after the 2013 restitution order was imposed as a part of her criminal sentence.

---

[4]In *Pena*, the Court of Criminal Appeals held that a complaint about a fine imposed as a part of criminal conviction must be raised on direct appeal from the criminal conviction. 71 S.W.3d at 337.

Bowen relies on the following statement made by the trial court at the 2013 sentencing hearing as a basis for being able to bring this proceeding now:

> And pursuant to that, you are now sentenced to seven years confinement in the Texas Department of Criminal Justice, a fine of $7,500, court costs of $321, restitution of $103 -- $103,344 to be paid to Dana White, the victim of this offense, with giving credit for any monies that you paid towards restitution. *If that cannot be agreed upon by your counsel and the District Attorney's Office, we can have another hearing as to what amounts you may be entitled to credit for.*

(Emphasis added). Bowen suggests that the trial court's reference to a future hearing permitted her to raise her contention about the 2011 settlement at any time thereafter, including filing a motion for an accounting seven years later.

Bowen's contention is without merit. The order to pay restitution was both orally pronounced by the trial court and included in the 2013 criminal judgment. The trial court's statement did not alter the timeframe for raising a challenge to the amount of restitution ordered by way of a direct appeal. In this proceeding, Bowen is essentially trying to relitigate the matters tried and decided at the 2013 sentencing hearing with respect to the 2011 settlement and its effect on the restitution due White. Moreover, from the context of the trial court's statement, the future hearing that it referenced would be if there was a disagreement over the amounts that Bowen may have paid toward the previous restitution order arising from the 2008 conviction and sentence.[5] *See Bowen I*, 322 S.W.3d at 436.

In *Ex parte Gardner*, the Court of Criminal Appeals considered whether a defendant could raise an issue not raised in his direct appeal, for the first in a habeas corpus proceeding. 959 S.W.2d 189, 191 (Tex. Crim. App. 1996). In *Gardner*, the

---

[5]The trial court indicated at the hearing on Bowen's motion for accounting that it assumed an agreement had been reached on the amounts that Bowen had paid toward restitution because no one came back to the trial court asking for a hearing.

11

defendant was convicted in 1981, and the Court of Criminal Appeals disposed of the defendant's direct appeal in 1987. *Id.* Between 1989 and 1994, the defendant filed three applications for habeas corpus. *Id.* It was not until his second application that he asserted a claim under *Estelle v. Smith*.[6] *Id.* The Court of Criminal Appeals held that the defendant waived his right to make the *Estelle* claim by failing to raise it in his direct appeal. *Id.*

Similarly, in *Ex parte Townsend*, the Court of Criminal Appeals held that a defendant cannot raise a claim in a habeas corpus proceeding for the first time if the defendant could have raised it on direct appeal. 137 S.W.3d 79, 81–82 (Tex. Crim. App. 2004). While *Gardner*'s and *Townsend*'s holdings occurred in the habeas corpus context, we believe their logic should extend to the situation here. As noted in the Texas Practice Series treatise on Criminal Practice and Procedure:

> Sound criminal justice policy supports the position of *Gardner* and *Townsend*—that even a matter preserved by action in the trial court cannot be raised on postconviction attack if it was not diligently pursued by direct appeal. The State has a legitimate and important interest in having defects in convictions identified as soon as possible. If a defect can be cured or avoided in a new prosecution, the State's ability to successfully pursue such a new prosecution is enhanced if this is done as soon as possible.

George E. Dix & John M. Schmolesky, 43B *Texas Practice: Criminal Practice and Procedure* § 59.9 (3d ed. 2021) (Failure to raise issue by direct appeal—In general).

In the civil context, the same principle applies to preclude Bowen's contentions in this appeal because they are an impermissible collateral attack on the

---

[6] 451 U.S. 454, 468 (1981). As noted by the Court of Criminal Appeals in *Gardner*, *Estelle* held that the "Fifth Amendment requires, among other things, that a capital murder defendant be warned that any statement that he makes during a psychiatric examination may be used against him at the punishment phase of his capital murder trial." 959 S.W.2d at 190 (citing *Estelle*, 451 U.S. at 468).

2013 restitution order. A direct attack on a final judgment usually occurs in the form of an appeal, motion for new trial, or a bill of review. *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 271 (Tex. 2012). These direct attacks against a final judgment must be brought within a defined time period after the trial court enters the judgment. *Id.* Unlike a direct attack, collateral attacks on final judgments are disfavored under the law. *Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005) (a state court action that addressed a collateral attack on a bankruptcy court's confirmation order). Public policy favors giving finality to court judgments. *Id.* (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex. 1989)). "A collateral attack runs counter to this strong policy of finality because a collateral attack attempts to bypass the appellate process in challenging the integrity of a judgment." *Id.* at 346.

Only void judgments are subject to collateral attacks. *Id.* (citing *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)). "A judgment is void only when it is apparent that the court rendering judgment 'had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act.'" *Id.* (quoting *Placke*, 698 S.W.2d at 363). Here, no one asserts that the 2013 restitution order or Bowen's 2013 sentence was void. Even if a separate action contemplates relief other than revoking the prior judgment, the separate action may still constitute a collateral attack on the prior judgment if "it necessarily challenges the integrity of the order." *Id.* at 347. Bowen's contentions on appeal are an impermissible collateral attack on the 2013 restitution order because they challenge the integrity of the restitution order.[7] *See id.*

Accordingly, Bowen's evidentiary challenge to the fifteenth finding of fact is overruled because the finding that she did not appeal the trial court's order for her

---

[7]The remainder of the findings of fact that Bowen challenges are matters that the parties litigated at the 2013 sentencing hearing.

to pay restitution of $103,344 is supported by legally and factually sufficient evidence. The remaining matter addressed in the fifteenth finding of fact is immaterial, as are the remaining findings of fact that Bowen challenges on appeal. *See Cooke Cnty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) ("[A]n immaterial finding of fact is harmless and not grounds for reversal."). We overrule Bowen's first and second issues.

In Bowen's third issue, she contends that the trial court entered incorrect conclusions of law thus resulting in an improper judgment. We review a trial court's conclusions of law de novo to determine if the trial court drew the correct legal conclusions from the facts. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). "The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id.* (citing *Templeton v. Dreiss*, 961 S.W.2d 645, 656 n.8 (Tex. App.—San Antonio 1998, pet. denied)). If the trial court rendered the proper judgment, we will not reverse it even if the trial court's conclusions of law are incorrect. *Moran v. Mem'l Point Prop. Owners Ass'n*, 410 S.W.3d 397, 402 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Bowen specifically challenges the following conclusions of law: one, two, six, seven, eight, nine, ten, and twelve. She contends that the crux of her third issue is "whether the land deeded and monies paid to Dana White via the October 2011 Settlement Agreement can be applied toward the restitution ordered March 6, 2013."

The conclusions of law that Bowen challenges are as follows:

> 1. The real property White received under the Civil Settlement in the Parnice Estate Litigation should not be credited as a settlement credit or otherwise applied towards the restitution ordered at the sentencing hearing herein, held on March 16 [sic], 2013.

2.    Bowen has accepted the restitution ordered, in that Bowen did not include that in her points of error when she did perfect her appeal subsequent to the Sentencing Hearing.

6.    Defendant cannot receive credit for settlement amounts representing punitive damages.

7.    A breach of duty related to the Trust, is a different act to a breach of duty related to the Parnice Douglass Estate.

8.    A breach of duty related to the Trust[] is a different act to a breach of duty related to the Jackie Douglass Estate.

9.    Bowen's second degree felony conviction herein for misapplication of fiduciary property related to the Trust, and her conduct in her respective fiduciary capacities relative to multiple estates were not each the "same act," but rather, multiple actions of misconduct.

10.    Bowen's second degree felony conviction herein for misapplication of fiduciary property related to the Trust, and Bowen's conduct in her respective fiduciary capacities relative to multiple estates did not result in a single injury; but resulted [in] numerous injuries, each of which entitled Dana White to separate measures of damages.

12.    The punishment aspect of restitution herein further negates application of a settlement credit from the Civil Settlement in the Parnice Estate Litigation.

As was the case with her challenges to the findings of fact, the bulk of the conclusions of law that Bowen challenges on appeal are matters that were actually litigated, or could have been litigated, at the 2013 sentencing hearing because they concern the effect of the 2011 settlement on the restitution that Bowen owed White.

In its second conclusion of law, the trial court determined that "Bowen has accepted the restitution ordered, in that Bowen did not include that in her points of error when she did perfect her appeal subsequent to the Sentencing Hearing." This conclusion of law is essentially the same as the fifteenth finding of fact that we have

15

previously determined to be dispositive of this appeal—that Bowen is precluded from collaterally attacking the 2013 restitution order by way of this proceeding. In support of her contention that the trial court's second conclusion of law is erroneous, Bowen cites to the comment made by the trial court at her 2013 punishment hearing when orally pronouncing her sentence. We have already determined that the trial court's statement did not excuse the requirement for Bowen to challenge the restitution order in her direct appeal in *Bowen III*. For the same reason, we overrule her challenge to the second conclusion of law.

A reversal based on the remainder of Bowen's challenges to the trial court's conclusions of law would undermine the integrity of the 2013 restitution order. *See Browning*, 165 S.W.3d at 346. In this regard, Bowen seeks for us to determine that the consideration that she conveyed to White in the 2011 settlement satisfied her entire restitution obligation—a contention that the trial court rejected at the 2013 sentencing hearing. *See Sigmar v. Anderson*, 212 S.W.3d 789, 795 (Tex. App.—Austin 2006, no pet.) (discussing *Browning* and stating that "issues that either were or should have been litigated in a prior judicial proceeding . . . cannot be relitigated in a subsequent proceeding that would have the effect of avoiding the prior court order or judgment")

Bowen asserts many different legal theories that she contends support her contention that she has already paid the entire amount of restitution to White. Namely, Bowen cites the following legal theories to support her contention: (1) that the trial court should not have awarded restitution under Article 42.037(f)(1) of the Texas Code of Criminal Procedure[8]; (2) that the 2011 settlement can be applied to

---

[8]In relevant portion, the Texas Code of Criminal Procedure provides that "[t]he court may not order restitution for a loss for which the victim has received or will receive compensation only from a source other than the compensation to victims of crime fund." CRIM. PROC. art. 42.037(f)(1).

restitution because restitution is not punitive in nature; and (3) under the one-satisfaction rule, White has already recovered what she is owed. If we were to reach the merits of Bowen's legal theories, each would effectively allow her to avoid the binding effect of the 2013 restitution order and subvert the appellate process. *See Browning*, 165 S.W.3d at 346. A finding in favor of Bowen, on any of her challenges to the conclusions of law would necessarily disturb the 2013 restitution order because the amount of restitution has already been litigated. *See Sigmar*, 212 S.W.3d at 795. Accordingly, we overrule Bowen's third issue.

*This Court's Ruling*

We affirm the order of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


August 4, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.