

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. WR-80,939-01, WR-80,939-02, WR-80,939-03

### Ex Parte ERIC REED MARASCIO, Applicant

### ON APPLICATIONS FOR WRIT OF HABEAS CORPUS
### CAUSE NOS. W380-80601-09-HC, W380-80602-09-HC, & W380-80603-09-HC
### IN THE 380TH DISTRICT COURT
### COLLIN COUNTY

**RICHARDSON, J., filed a concurring opinion in which NEWELL, J., joined.**

### CONCURRING OPINION

The issue before this Court is whether a double jeopardy claim that could have been raised on direct appeal, but was not, may nevertheless be raised in an Article 11.07 application for writ of habeas corpus.[1] Under certain circumstances, a writ applicant may be able to raise a double jeopardy violation that otherwise might be procedurally barred from habeas review. However, in this case, I agree that Applicant's claim is not cognizable, but that is because I do not believe that a double jeopardy violation is clearly apparent from the face of the record.

---

[1] TEX. CODE CRIM. PROC. art. 11.07 (West 2014).

## BACKGROUND

Applicant, Eric Reed Marascio, was charged under three separate indictments for the felony offenses of False Statement to Obtain Property or Credit,[2] Money Laundering,[3] and Engaging in Organized Criminal Activity.[4]  All three cases were set in the 380th Judicial District Court.  Three separate bonds were set—one for each case.  The terms of Applicant's release under each of the three bond orders required that he be present at all court settings and wear an electronic leg monitor (ELM) twenty-four hours a day. The judge set the next court date on the three cases, and on January 8, 2009, Applicant appeared with his attorney. At that time, the court clerk set the three cases for another pre-trial hearing on March 19, 2009, and a trial date for April 20, 2009.  Applicant's attorneys rescheduled the March 19th date for March 25, 2009, but the April 20th trial date remained the same. Applicant did not appear for the March 25, 2009, hearing.[5]  It is undisputed that Applicant was aware of, and failed to appear for, the March 25th court date and the April 20th trial date. Applicant was found guilty of three separate charges of Bail Jumping and Failure to Appear on the March

---

[2] *State v. Marascio*, No. 380-82407-08 (380th Dist. Ct., Collin County, Tex. *dismissed* Dec. 16, 2010); TEX. PENAL CODE §32.32 (West 2009).

[3] *State v. Marascio*, No. 380-82408-08 (380th Dist. Ct., Collin County, Tex. *found guilty by jury & sentenced 75 years* Dec. 10, 2010); TEX. PENAL CODE §34.02 (West 2009).

[4] *State v. Marascio*, No. 380-82409-08, (380th Dist. Ct., Collin County, Tex. *dismissed* Dec. 16, 2010); TEX. PENAL CODE §71.02 (West 2009).

[5] Applicant's attorney appeared for the pre-trial hearing, but Applicant did not.  Applicant had removed his ELM, and he hid from authorities for several weeks.  Applicant was eventually apprehended in Greenville, South Carolina, in May of 2009, with a picture identification card under an assumed name.

25, 2009, hearing date and was sentenced to concurrent eight-year sentences and a $10,000 fine on each of the three charges.[6]

Applicant raised two issues on direct appeal asserting that the trial court erred in admitting false identification evidence and expert testimony that was not reliable. He did not raise the claim of double jeopardy on appeal. The Dallas Court of Appeals overruled Applicant's two issues and affirmed the judgments.[7] Applicant filed these three applications for writ of habeas corpus pursuant to the Texas Code of Criminal Procedure, Article 11.07, contending, among other things, that his convictions in these three cases violate the constitutional prohibition on double jeopardy.[8]

---

[6] The State tried Applicant under six separate indictments, consolidated into one trial, for the offenses of Bail Jumping and Failure to Appear under Texas Penal Code § 38.10, contending that he missed the pre-trial setting for each of the three offenses, and he missed the trial setting for each of the three offenses, for a total of six separate Bail Jumping and Failure to Appear charges. The jury failed to reach a verdict on the three indictments alleging that Applicant failed to appear on the date of trial, so the court declared a mistrial on those three charges. Because a mistrial was declared on the three Bail Jumping and Failure to Appear charges related to Applicant's failure to appear on the April 20th trial date, the issue of whether a conviction on each of those cases would have violated double jeopardy is not before this Court. We have no information on whether the State has attempted to retry the Applicant for those three cases. Should Applicant wish to raise double jeopardy related to any such *attempt*, it would not be done pursuant to Article 11.07.

[7] *Marascio v. State*, Nos. 05-10-01025-CR, 05-10-01026-CR, 05-10-01027-CR, 2012 WL 472920 (Tex. App.—Dallas Feb. 15, 2012, pet. ref'd) (mem. op., not designated for publication). The judgments were reformed to correctly identify the judges who presided over the case at trial.

[8] We ordered that these applications filed and set for submission to determine the following issues:
  1. Whether the double jeopardy issue was preserved by trial counsel;
  2. Whether double jeopardy is available as a free-standing claim on post-conviction habeas review where the issue was preserved at trial but not raised on direct appeal; and
  3. Whether convictions for multiple charges of failure to appear arising from a single failure to appear constitute a double jeopardy violation.

## ANALYSIS

**1.      Did Applicant Preserve His Claim of Double Jeopardy For Direct Appeal?**

To preserve error for appellate review, a complaint must be made to the trial court "by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."[9] The record also must show that the trial court either "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal."[10]  A complaint must "simply be clear enough to provide the judge and the opposing party an opportunity to address and, if necessary, correct the purported error."[11]  A party need not recite "magic words" or cite specific statutes in order to preserve a complaint for appeal, so long as the party conveys the substance of the complaint to the trial judge.[12]

At the beginning of Applicant's trial on the six separately indicted cases of Bail Jumping and Failure to Appear, he pled "not guilty" after the prosecutor read the first

---

[9] TEX. R. APP. P. 33.1(a)(1)(A).

[10] TEX. R. APP. P. 33.1(a)(2)(A) & (B).

[11] *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011) (citing *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009)).

[12] *Bryant v. State*, 391 S.W.3d 86, 92 (Tex. Crim. App. 2012); *Bennett v. State*, 235 S.W.3d 241, 243 (Tex. Crim. App. 2007) (citing *Hill v. State*, 90 S.W.3d 308, 312 (Tex. Crim. App. 2002).

indictment. After each of the remaining five indictments were read by the prosecutor, the court asked Applicant how he pled, and his response each time was "former jeopardy." The court entered a plea of "not guilty" on his behalf as to each charge. At the jury charge conference, Applicant objected that the jury charge did not contain an instruction on double jeopardy. He complained that the jury charge did not permit the jury to determine "whether or not the defendant has been placed in jeopardy after having pled to the first indictment," and whether the "five subsequent cases are functionally the same offense." The trial judge overruled his objection. The State argues that Applicant failed to preserve his claim of double jeopardy at trial because he did not specifically object to being tried for multiple offenses based on a single act. The State claims that simply urging "former jeopardy" did not sufficiently alert the trial court that Applicant was claiming multiple punishments.

Applicant voiced his double jeopardy complaint at the beginning of the trial and again at the jury charge conference. Therefore, in my opinion, he stated his complaint clearly enough to provide the judge and the prosecutor an opportunity to address and, if necessary, correct the purported double jeopardy error. Applicant's claim of "former jeopardy" was made with sufficient specificity to make the trial court aware of the nature of the complaint in compliance with Texas Rule of Appellate Procedure 33.1, thus preserving his double jeopardy claim for appellate review. However, Applicant did not raise a double jeopardy claim on direct appeal. The question is, can he now raise it in an 11.07 writ application.

**2.**     **Is Applicant's Double Jeopardy Claim Available As A Free-Standing Claim On Post-Conviction Habeas Review Where The Issue Was Preserved At Trial But Not Raised On Direct Appeal?**

This Court has long held that a writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal.[13] In *Ex parte Townsend*, we held that even constitutional claims are forfeited if the applicant had the opportunity to raise the issue on appeal.[14] The writ of habeas corpus is an extraordinary remedy that is available only when no other adequate remedy at law exists.[15] Since Applicant could have raised his double jeopardy claim on direct appeal and failed to do so, *Townsend,* and the collection of cases cited in and citing to *Townsend*, would arguably dictate that Applicant's double jeopardy claim is not cognizable and that relief should simply be denied without reviewing the merits of such claim.

However, in my opinion, our inquiry should not stop there. Determining cognizability of a double jeopardy claim triggers further analysis pursuant to *Gonzalez v. State*.[16] *Gonzalez*

---

[13] *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. Feb. 4, 1998) (op. on reh'g) (citing to *Ex parte Goodman*, 816 S.W.2d 383, 385 (Tex. Crim. App. 1991)). *See also Ex parte Groves*, 571 S.W.2d 888, 890 (Tex. Crim App. 1978) (noting that "we have consistently held that habeas corpus will not lie as a substitute for an appeal").

[14] 137 S.W.3d 79, 81-82 (Tex. Crim. App. 2004).

[15] *Ex parte Groves*, 571 S.W.2d at 890. *See also Ex parte Richardson*, 201 S.W.3d 712, 713 (Tex. Crim. App. 2006) ("[T]he trend of this Court has been to draw stricter boundaries regarding what claims may be advanced on habeas. We have often stated that 'the Great Writ should not be used' to litigate matters 'which should have been raised on appeal' or at trial, and while we have not always consistently followed this maxim in the past, in recent years we have more closely adhered to it.").

[16] 8 S.W.3d 640 (Tex. Crim. App. 2000).

involved a double jeopardy claim that was raised for the first time on direct appeal. Although this Court held in *Gonzalez* that the appellant had forfeited his double jeopardy claim on appeal by failing to raise it at trial, we announced an exception to such rule of procedural default:

> [B]ecause of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal or even for the first time on collateral attack when the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.[17]

*Gonzalez* recognized that a double jeopardy claim may be cognizable on habeas review even though it is being raised "for the first time on collateral attack" because it is a "fundamental" right.[18]

In *Ex Parte Knipp*,[19] we unanimously held that the applicant raised a meritorious double jeopardy claim in his 11.07 writ application. Even though such claim was first raised in a subsequent application for a writ of habeas corpus, and thus would have been procedurally barred from review under article 11.07, Sec. 4(a), we determined that such claim was cognizable, and we granted the applicant relief. Not only was the double jeopardy violation apparent on the face of the record, but the State indicated its willingness to forego its substantial interest in the finality of the applicant's plea because it would serve no

---

[17] *Id.* at 643.

[18] *Id.* at 643.

[19] 236 S.W.3d 214 (Tex. Crim. App. 2007).

legitimate state interest to enforce the usual rules of procedural default under Article 11.07, Section 4(a).[20]

In *Ex parte Denton*,[21] this Court addressed the issue of whether a double jeopardy violation could be remedied in a habeas proceeding or was procedurally defaulted because no objection was raised in the trial court.[22] Following *Gonzalez* and *Knipp*, we held that an applicant's double jeopardy claim may be reviewed on collateral attack, under an exception to the procedural bar, if two conditions are met: (1) the undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[23] We concluded that the applicant's claim of a double jeopardy violation could be addressed and remedied in a habeas corpus proceeding even though he failed to raise such claim in the trial court.[24]

In this case, the issue is whether Applicant's double jeopardy claim, that was preserved at trial but not raised on direct appeal, can survive a *Townsend*-based procedural bar to relief on habeas review. Although *Denton* involved a different procedural bar—an

---

[20] *Id.* at 216, n. 3 (citing to *Gonzalez*, 8 S.W.3d at 642-43).

[21] 399 S.W.3d 540 (Tex. Crim. App. 2013).

[22] The applicant in *Denton* also claimed that his counsel was ineffective by failing to object to the double jeopardy violation in the trial court or to raise it on direct appeal.

[23] *Denton*, 399 S.W.3d at 544 (citing to *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

[24] *Id.* at 545 (quoting *Ex parte Milner*, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) ("We recently held that,'[w]hen a double jeopardy violation has occurred, a writ of habeas corpus is a proper venue through which to challenge the error.'").

applicant's failure to raise, and thus preserve, a double jeopardy claim at trial—I see no true distinction here. Double jeopardy protections are no less "fundamental," and the two-part *Gonzalez* rule no less applicable, simply because the procedural default occurred at the appellate level rather than at the trial level. Therefore, I would conclude that *Gonzalez* allows a double jeopardy claim to withstand the procedural bar of *Townsend*, so long as the two conditions of *Gonzalez* are met: (1) a double jeopardy violation is apparent from the face of the record; and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.[25]

As to the second prong of the *Gonzalez* test, while the state may have an interest in maintaining the finality of a conviction, I see no legitimate interest in maintaining a conviction *if* it is clear on the face of the record that the conviction was obtained in contravention of constitutional double jeopardy protections. As Supreme Court Justice Stevens noted in *Oregon v. Kennedy*, "Society's interest, of course, is not simply to convict the guilty. Rather its interest is 'in fair trials designed to end in just judgments.'"[26]

Instead, the focus in this case should be on whether Applicant has met the first prong of the *Gonzalez* test—*is a double jeopardy violation apparent on the face of the record.*

---

[25] *Gonzalez v. State,* 8 S.W.3d at 643.

[26] *Oregon v. Kennedy*, 456 U.S. 667, 682, n. 7 (1982) (Stevens, J., concurring) (quoting in part *Wade v. Hunter*, 336 U.S. 684, 689 (1949)) *quoted in Denton*, 399 S.W.3d at 545.

**3.** **Is A Double Jeopardy Violation Apparent From The Face of The Record?**

*3.1    Cognizability*

As a general rule, before this Court reviews the merits of a collateral attack, we first determine cognizability—whether Texas Code of Criminal Procedure Article 11.07 is "the proper method for presenting Applicant's claim to this Court."[27] Once we determine that a claim is cognizable, we then can resolve a claim on the merits. As we noted in *Ex parte Carmona*, "[h]abeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void, or for denials of fundamental or constitutional rights. If the applicant's claim fits within one of these categories, then his claim is cognizable in post-conviction habeas proceedings."[28]

In *Ex parte Denton*, we followed this two-step procedure of first assessing cognizability, then resolving the claim on the merits. As we applied the rule of *Gonzalez* to our cognizability assessment in *Denton*, without explanation this Court transformed the first prong of *Gonzalez*, from requiring a double jeopardy *violation* to be apparent, to simply requiring that a double jeopardy *claim* be apparent, in order to escape the procedural bar:

> Because of the fundamental nature of the double-jeopardy protections, a double-jeopardy claim may be raised for the first time on appeal or on collateral attack if two conditions are met: 1) the undisputed facts show that the double-jeopardy violation is clearly apparent on the fact of the record; and

---

[27] *Ex parte Geiken*, 28 S.W.3d 553, 556 (Tex. Crim. App. 2000).

[28] 185 S.W.3d 492, 494-95 (Tex. Crim. App. 2006).

2) when enforcement of the usual rules of procedural default serves no legitimate state interest.[29]

A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the double-jeopardy claim. In this case, there is no need for such expansion of the record because the writ record contains all of the information needed to address the merits of the double-jeopardy claim. If we find that there is a double-jeopardy violation, the remedy will be to vacate one of the convictions; no additional proceedings will be required.[30]

In *Denton*, we decided that the applicant's double jeopardy claim was cognizable because we were going to be able to resolve the merits of such claim based upon information in the record alone. We then analyzed whether the applicant's double jeopardy claim had merit, and we held that it did.[31] Thus, the applicant's failure to object at the trial court on double jeopardy grounds did not preclude his right to relief on habeas review.

Reconciling our holdings in *Townsend* and *Gonzalez* leads me to conclude that a double jeopardy claim which could have been raised on direct appeal but was not is not cognizable in an 11.07 writ, unless it meets both prongs of *Gonzalez*. And, under the rule of *Gonzalez*, a double jeopardy claim may only be raised by way of a collateral attack if the

---

[29] 399 S.W.3d at 544 (citing to *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)).

[30] *Id.* at 544-45 (citing to *Ex parte Knipp*, 236 S.W.3d 214, 216, n. 3 (Tex. Crim. App. 2007); *Gonzalez v. State,* 8 S.W.3d at 643*;* and *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006)).

[31] *Id.* at 547.

undisputed facts show that the double jeopardy violation is clearly apparent on the face of the record.

The next question is, which "record" must contain clear evidence of a double jeopardy violation? Our decision in *Ex parte Lopez*[32] answers that question. In *Lopez*, the applicant was alleged to have stolen four motorcycles: one in Hays County, two in Bexar County, and one in Bell County. Police found them hidden in a storage shed in Bexar County. Applicant was convicted of the Hays County theft in 2010, and convicted in Bexar County of aggregate theft of the motorcycles in 2011. The Bexar County indictment alleged the theft of the Hays County motorcycle and both Bexar County motorcycles, aggregating their values to determine the total amount stolen.[33] It was clearly apparent from the writ record that the applicant was being punished twice for the Hays County motorcycle theft, which constituted a double jeopardy violation. However, this Court found that the alleged error was procedurally barred because no double jeopardy violation was raised before the trial court even though it could have been. We noted that we have "not always followed the general procedural default rules with double jeopardy claims due to the fundamental nature of the right."[34] However, following *Gonzalez*, we held that, "although the double jeopardy violation appeared to be clear when the Bexar County record was reviewed along with the

---

[32] No. WR-78,928-03, 2013 WL 2726319 (Tex. Crim. App. 2013)(mem. op., not designated for publication).

[33] The Bell County motorcycle was not referenced on that indictment.

[34] *Lopez,* 2013 WL 2726319 at *2 (citing to *Gonzalez*, 8 S.W.3d at 642-43; *Denton*, 399 S.W.3d at 544).

documents from the Hays County record, *the error was not apparent on the face of the Bexar County record alone, which it must be to overcome the procedural bar resulting from Applicant's failure to lodge an objection before the trial court.*"[35]

Unlike, for example, an ineffective assistance of counsel claim in which a writ applicant is allowed to present evidence to support his claim for relief that is outside of the trial court record, we are limited to what is in the trial court record to assess whether Applicant has met the first prong of *Gonzalez* by showing that a double jeopardy violation is clearly apparent from the face of the record. If a double jeopardy violation is not clearly apparent from the face of the trial record, then Applicant's claim does not meet the first prong of *Gonzalez*, which means that it does not survive the procedural bar under *Townsend*, and it is therefore not cognizable.

### 3.2 Has There Been a Double Jeopardy Violation? What is the Allowable Unit of Prosecution for Bail Jumping and Failure to Appear?

Applicant was charged and convicted under three separate indictments with "intentionally or knowingly fail[ing] to appear [on March 25, 2009] in accordance with the terms of his release"[36] on the charge of False Statement to Obtain Property or Credit[37], on the

---

[35] *Id.* at *3 (emphasis added).

[36] TEX. PENAL CODE §38.10 (WEST 2009) ("Bail Jumping And Failure To Appear").

[37] The indictment in Cause No. 380-80603-09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380-82407-08.

charge of Money Laundering[38] and on the charge of Engaging in Organized Criminal Activity.[39] He claims that his convictions for the latter two charges violated double jeopardy because he is being punished three times for the failure to appear one time on March 25, 2009.

The Double Jeopardy Clause of the Fifth Amendment,[40] applicable to the states through the Fourteenth Amendment, protects an accused against: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[41] The first two categories do not apply here. This case involves the "multiple punishments" variation. There are two types of multiple punishments claims. The first occurs when a defendant is convicted of both a greater and a lesser included offense because the same conduct is being punished once for the basic conduct and a second time for that conduct plus more.[42] The second occurs when the same criminal act is punished under two distinct statutes and the Legislature intended the conduct to be punished only once.

---

[38] The indictment in Cause No. 380-80601-09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380-82408-08.

[39] The indictment in Cause No. 380-80602-09 charged Applicant with failing to appear for a docketed court setting in accordance with the terms of his release in Cause No. 380-82409-08.

[40] The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence twice put in jeopardy of life or limb." U.S. CONST. amend. V.

[41] *Ex parte Denton*, 399 S.W.3d at 545 (citing to *Brown v. Ohio*, 432 U.S. 161, 165 (1977); *Ex parte Amador*, 326 S.W.3d 202, 205 (Tex. Crim. App. 2010)).

[42] *Ex parte Denton*, 399 S.W.3d at 545 (citing to *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981)).

The facts here do not fit within the type of multiple punishments scenario involving two different offenses where one is a lesser included offense of the other. This case seems more analogous to the multiple punishments scenario in which "the same act or transaction constitutes the violation of two distinct statutory provisions."[43] I believe, however, that the correct double jeopardy analysis can be conducted under a units inquiry. A units analysis is employed when the offenses are alternative means of committing the same statutory offense.[44] *Bigon v. State*[45] involved the issue of whether there had been multiple punishments for violating the same offense. In *Bigon*, this Court noted that "analysis of an allowable unit of prosecution involves a situation in which two offenses from the same statutory section are charged."[46] The scope of the Double Jeopardy Clause's protection against multiple punishments depends on ascertaining the allowable unit of prosecution.[47] Even when the offenses in question are proscribed by a single statute, the protection against double jeopardy is not violated if the offenses constitute separate allowable units of prosecution.[48]

---

[43] *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (holding that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.").

[44] *Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

[45] 252 S.W.3d 360 (Tex. Crim. App. 2008).

[46] *Id.* at 371-72.

[47] *See Ex Parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (stating that the Legislature defines whether offenses are the same by prescribing the allowable unit of prosecution, which is "a distinguishable discrete act that is a separate violation of the statute.").

[48] *Ex parte Benson*, 459 S.W.3d 67, 73 (Tex. Crim. App. 2015) ("This latter inquiry involves determining such things as whether there were two murder victims, whether a victim who was

Applicant was found guilty of three offenses under the same statute (Bail Jumping and Failure to Appear), so the allowable unit of prosecution for that statute must be determined in order to decide how many offenses Applicant committed. Section 38.10 does not define the allowable unit of prosecution for the offense of Bail Jumping and Failure to Appear. The best indicator of legislative intent regarding the unit of prosecution is the gravamen or focus of the offense.[49]

Under Section 38.10, "[a] person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if he intentionally or knowingly fails to appear in accordance with the terms of his release."[50] Applicant argues that the gravamen of the offense is *his one time* "fail[ure] to appear." I would agree that the gravamen of the offense of Bail Jumping and Failure to Appear is, in fact, the failure to appear. However, in this case, there were three separate underlying cases, which required three separate bonds, and Applicant failed to appear when called for a hearing on each of the three separate underlying cases. Thus, the gravamen of each of these three Bail Jumping and Failure to Appear offenses is the failure to appear *on that particular case*, and that results in

---

assaulted on Monday was assaulted again on Tuesday, or whether multiple kinds of sex acts were committed against a victim.").

[49] *Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011). For example, in *Spradling v. State*, 773 S.W.2d 553, 557 (Tex. Crim. App. 1989), this Court determined that the gravamen of the offense for Failure to Stop and Render Aid was that the person render aid to each person injured in an accident. Therefore, it was permissible to obtain multiple convictions for failure to stop and render aid to multiple victims, even though that defendant failed to stop after the one accident.

[50] TEX. PENAL CODE § 38.10 (West 2009).

three separate offenses of failing to appear. The operative wording in the statute is the "fail[ure] to appear in accordance with the terms of his release," not the mere absence from the court. Applicant was released under three separate orders allowing for bail on each of the three separate underlying felonies (Money Laundering, False Statement to Obtain Property or Credit, and Engaging in Organized Criminal Activity). Each bail contract was a separate promise by Applicant to appear in court to answer that particular charge.

Logic dictates that, in this case, Applicant may be convicted for failing to appear on each separately indicted and separately bonded charge. Using a hypothetical exercise, if Applicant had been scheduled to appear in court on the three separately indicted charges on three separate days, and he missed all three days, it is clear that three separate failure to appear charges would be appropriate. If Applicant had been scheduled to appear in court on the three cases on the same day, but at different times—say 9:00 a.m., 1:00 p.m., and 3:00 p.m.—missing court on that one day would still result in three separate failure to appear charges. What if one court setting was at 9:00 a.m., another at 9:05 a.m., and the third at 9:10 a.m.? Applicant's absence on that day would still constitute a failure to appear for three separate court settings and a forfeiture of three separate bonds. In this case, although Applicant's three court settings were scheduled on the same day at the same time, it makes no sense to mesh three charges of Bail Jumping and Failure to Appear into one charge simply based upon when such court appearances are scheduled.

In most cases, the settings for each separate case in a court are controlled by court personnel. Applicant's contention—that the single act of failing to appear for a particular

proceeding is the gravamen of the offense—is untenable because, under that interpretation, the number of prosecutions Applicant could face hinges on whether hearings on his three separate case files were scheduled together or apart. The scheduling of court appearances on separate files is an administrative matter. A statute's allowable unit of prosecution cannot be a determination based upon such administrative convenience. In my opinion, the allowable unit of prosecution under Section 38.10 for Bail Jumping and Failure to Appear depends upon the number of cases and separate bail contracts involved.[51]

In this case, the magistrate set three separate bonds—one for each of Applicant's three felony indictments (Money Laundering, False Statement to Obtain Property or Credit, and Engaging in Organized Criminal Activity). The bondsman was liable on each bond corresponding to each of the three cases because Applicant was required to appear in court on each of these three cases. Although Applicant's court settings on March 25, 2009, were

---

[51] Other jurisdictions have held that in a failure-to-appear case, the unit of prosecution depends upon the number of separate bail bonds that were forfeited. *See State v. Garvin*, 699 A.2d 921, 925-26 (Conn. 1997) (multiple convictions for failure to appear arising out of forfeiture of multiple separate bail bonds did not violate double jeopardy clause); *State v. Richter*, 525 N.W.2d 168, 170 (Wis. 1994) (holding that a defendant may be convicted once for each bail bond forfeited by failure to appear); *Johnson v. Virginia*, No. 1138-14-2, 2015 WL 4078146, at *3 (Va. Ct. App. July 7, 2015) (holding that the Legislature intended the unit of prosecution in the failure-to-appear statute to correspond to the number of underlying offenses for which a defendant is obligated to appear). However, other jurisdictions have held that the act of failing to appear gives rise to only one offense. *See Lennon v. United States*, 736 A.2d 208 (D.C. 1999) (holding that defendant who fails to appear for single court proceeding may be convicted of only one violation of failing to appear, even if proceeding involves more than one underlying charge); *Bristow v. State*, 905 P.2d 815 (Okla. Crim. App. 1995) (holding that the unit of prosecution for failure to appear is the act of nonappearance, rather than the number of bonds forfeited). In *Lennon*, however, the appellant was not admitted to bail, but was released on his personal recognizance after he signed a single notice to appear, and the statute under which he was convicted specifically proscribed failing to appear in court, not violating the terms of a bond agreement.

consolidated, I would conclude that, under the facts of this case, Applicant's convictions for three separate Bail Jumping and Failure to Appear offenses were not in violation of his double jeopardy rights. Therefore, because a double jeopardy violation is *not* clearly apparent from the face of the record, Applicant's double jeopardy claim does not meet the first prong of *Gonzalez*.

## CONCLUSION

I would hold that Applicant preserved his claim of double jeopardy at trial, and thus he could have raised it on direct appeal. Since he failed to do so, the question then becomes whether Applicant's double jeopardy claim survives a *Townsend*-based procedural bar under the two-part *Gonzalez* test. I would conclude that it does not. Because I do not believe that there was a double jeopardy violation here, (i.e., a double jeopardy violation is not apparent from the face of the record), I would hold that *Gonzalez* does not allow Applicant to circumvent the procedural bar under *Townsend*, and since Applicant's double jeopardy claim is procedurally barred (i.e., it is not cognizable), he is not entitled to relief.


FILED:     October 7, 2015
PUBLISH